NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

JAMES COOKE, PETITIONER, v. COOKE & COLE SILK CO., INC., RESPONDENT.

Decided September 16, 1941.

For the petitioner, *J. Vincent Barnitt.*

For the respondent, *George E. Meredith* (*Walter W. Hubley,* of counsel).

The following in substance are the undisputed facts developed by the evidence: On April 15th, 1939, and for nineteen years prior thereto, James Cooke, the petitioner herein, was regularly employed by the respondent at its plant in Paterson, New Jersey, as a silk twister, receiving for his said services wages at the rate of forty dollars ($40) per week. In addition thereto he served as one of the officers of the respondent-corporation in the capacity of president, performing merely perfunctory and nominal services for which he received no remuneration. While his duties as a silk twister consisted chiefly of preparing new warps to replenish the various looms from time to time, he would also assist the loom-fixer, John DePuyt, as occasion arose, in lifting and installing new warp beams into the frames of the looms. It so happened that Cooke was engaged in the latter capacity at the time of the mishap, which, according to his testimony, occurred about eleven o'clock on the above morning, when he was seized with a shooting pain across his upper left chest during the act of lifting a fresh warp beam, approximately 300 to 350 pounds in weight, and inserting it into the loom frame with aid of the loom-fixer. He testified that immediately thereafter he experienced a dizzy feeling; that "everything seemed to go black" (sic); and that he uttered to his companion, DePuyt, "By God, there is something; there is something funny, Jack." At lunch time he felt too ill to eat and for the rest of the day he refrained from doing work of any kind, merely sitting around and resting until 3:30 P. M., when he left for his home. He noted very little change in his condition, if any, upon his arrival at home; partook of no dinner that evening save for a cup of tea; and retired to bed around nine o'clock. Shortly after midnight—at approximately one o'clock the next morning, he was aroused from his sleep by sharp pains in the same area of the chest, accompanied by shortness of breath, which pains appeared to be of

greater severity than those of the day before and seemed to radiate upward into the region of the left armpit. In an effort to relieve himself of the pain, Cooke arose from bed and applied Vick's salve to his chest, rubbing it in over the affected area but with no avail. Although resumption of work on April 14th, 1939, was *contra*-indicated because of his grave condition, he nevertheless reported for duty at the usual time between seven and eight o'clock. Shortly after eight o'clock it became necessary for him to ascend a ladder to a gantry—an elevated platform forming part of a Jacquard loom, to make an inspection of the machine, and upon descending the said ladder, he felt weak, dizzy and sick to his stomach with an urge to go to the toilet and defecate. Upon leaving the toilet, he appeared to stagger as he walked through the hallway, and only through the timely aid of a fellow worker was further injury averted when he grabbed Cooke just as he was about to collapse and fall. Because of his seemingly grave condition, he was lain prone on the floor so he might rest for awhile, and attempts were resorted to in an effort to revive him—one of the girl employees bathing his forehead with cold water. He was taken home in an automobile later in the morning by his son and daughter and was assisted to bed by them. Dr. Paul Rauschenbach, Jr., was thereupon summoned; he arrived at petitioner's bedside shortly after 9:00 A. M. and before making an examination he first obtained a history from the petitioner. Upon examination, he found petitioner in a state of collapse and acute shock; perspiring freely; cold and clammy; thready pulse; low blood pressure; subnormal temperature; distant heart sounds. Petitioner's chief complaints were pains in left chest radiating to arm and down to the fingers. Dr. Rauschenbach diagnosed the condition as one of coronary occlusion, administered a hypodermic injection of morphine, and then turned the case over to Dr. John E. Leach, an internist and cardiologist. At 2:00 P. M. on the same day, the petitioner was attended by Dr. Leach who obtained a history and observed upon his examination findings similar to those obtained by Dr. Rauschenbach. He diagnosed the case as myocardial infarction caused by the lifting episode on April 13th, 1939,

and subsequent collapse on April 14th, 1939. His treatment consisted of rest in bed for seven weeks, medication and restricted exercise. At the present time Cooke suffers from general weakness, pains in left chest and left arm, difficult breathing and tires easily especially upon ascending stairs or walking to the corner. Admittedly he is totally incapacitated at the present time and has never resumed work since the day of his collapse at the respondent's plant.

Petitioner's right to a recovery of compensation is challenged by the respondent upon the ground he has failed to sustain the burden of proving an accident arising out of and in the course of his employment; and upon the further ground that his present condition is due to natural causes, and not the result of a compensable accident.

\*   \*   \*   \*   \*   \*   \*

The principle that the Workmen's Compensation Statute is remedial and should be broadly and liberally construed has been especially extended by the courts in interpreting and construing the word "accident" as used therein. The word "accident" should be interpreted in its usual, ordinary and popular sense as an event which takes place without one's foresight or expectation; an undesigned, sudden and unexpected event, change, contingency; an occurrence which proceeds from an unknown cause, or which is an unusual effect of a known cause and hence unexpected and unforeseen. On the subject of what constitutes an "accident" within the intendment of the statute, it has been generally held that personal injury by accident may include strain. It seems hardly necessary to refer to citations and adjudications in support of a principle so universally accepted. And in the case of *Bernstein Furniture Co.* v. *Kelly,* 115 *N. J. L.* 500; 180 *Atl. Rep.* 832, the principle was expanded to include cases involving strain of the heart, holding that an accidental strain of one's heart, even though the heart was previously weakened by disease, is a compensable injury.

In *Hentz* v. *Janssen Dairy Corp.,* 122 *N. J. L.* 494; 6 *Atl. Rep.* (2d) 409, the leading case in New Jersey dealing with coronary occlusion in which recovery was allowed, Mr. Justice Bodine, who delievered the opinion for the Court of

Errors and Appeals, cites with approval the case of *Clover, Clayton & Co.* v. *Hughes,* 3 *B. W. C. C.* 284, in which Lord Loreburn stated the rule as follows: "I do not think we should attach any importance to the fact that there was no strain or exertion out of the ordinary. It is found by the county court judge that the strain in fact caused the rupture, meaning no doubt, that if it had not been for the strain, the rupture would not have occurred when it did. If the degree of exertion beyond what is usual had to be considered in these cases, there must be some standard of exertion, varying in every trade. Nor do I think we should attach any importance to the fact that this man's health was as described * * *. An accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or the condition of health."

In *Quay* v. *Brown Co.,* 83 *N. H.* 392; 142 *Atl. Rep.* 697, it was decided, first, that compensation may only be had for an accidental injury; and second, that the accidental feature may consist either of cause or effect. Chief Justice Peaslee, in delivering the opinion of the Supreme Court, said: "As stated in some of the cases, it is no less an accident when a man suddenly breaks down than when there is a like mishap to the machine he is operating. Nor is it a defense that the workman had some predisposing physical weakness, but for which he would not have broken down. If the employment was the cause of the collapse, in the sense that but for the work he was doing it would not have occurred when it did, the injury arises out of the employment. Citing cases * * *. If the design of the statute were merely to impose a new rule of liability for fault, there would be force in the contention that, where unusual physical weakness of the workman, not known to or reasonably discoverable by the employer, is a contributing cause for the injury, there should be no recovery. But the act has a very different object in view. Compensation is not dependent upon any fault of the employer, but is awarded whenever the fortuitous event overtakes the workman in the course of and out of his employment. Its object is alleviation of misfortune and not compensation for a legal wrong."

And in the very recent case of *McCormick Lumber Co. et al.* v. *Department of Labor and Industries et al.* (Washington Supreme Court, decided January 7th, 1941, and not yet reported), the court held: "An accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or the condition of the workman's health. To say now that some unusual effort or strain is necessary to render death compensable, would not only be in direct conflict with the language of this court's holdings, but would also introduce an element of uncertainty and confusion, in that every case would present a problem as to the standard to be used in determining whether or not, in a given instance, the exertion was unusual, and whether or not the workman was expending only the ordinary exertion required in a particular employment."

Applying these accepted principles to the present case, I feel reasonably satisfied that the proofs herein meet with the required tests. While it is true that, at the time of the accident on the morning of April 13th, 1939, Cooke was engaged in the performance of one of his usual tasks—that of assisting in the lifting of a 300 to 350 pound warp beam into a loom, which was part of his regular work, the resulting effect of such lifting on that occasion upon his heart was unusual and constituted an "unlooked-for mishap or untoward event which was not expected or designed." It is of no consequence that the petitioner had lifted warp beams as a daily routine for many years prior to the day in question, some of which warps weighed considerably in excess of 350 pounds; what distinguishes the present lifting from the prior ones is the unusual and unexpected affect resulting therefrom; the physical strain superinduced by the lifting at that precise moment was more than his heart could withstand. That which distinguishes an accident from other events is the element of being unforeseen and unexpected. An accident is an occurrence which proceeds from an unknown cause, or which is an unusual effect from a known cause, and hence unexpected and unforeseen.

As to the second and equally important question, dealing

with causal relation, injury and disability, there is presented the usual conflict of opinion between the medical experts; but the weight of the medical testimony is plainly, if not indeed overwhelmingly, in favor of the petitioner. A review of the lengthy medical testimony of the various physicians offered in behalf of the respective parties discloses a definite contrariety of medical viewpoint both as to diagnosis as well as to causal relation.

\* \* \* \* \* \* \*

The respondent, in urging for a dismissal of the present claim, seems to place undue stress upon the fact that Cooke was of advanced age, to wit sixty-nine years; that he was gradually nearing the end of his productive days as an industrial worker; and that a physical breakdown due to deterioration by age might be expected sooner or later irrespective of his employment. Such contention, of course, is wholly without substance. The act prescribes no standard of fitness or age to which an employee must conform. Compensation is not based upon any implied warranty of health or immunity from latent and unknown tendencies to disease, which may develop into positive ailments if excited into a state of activity by trauma. Mr. Justice Perskie, speaking for the Supreme Court in the case of *Bernstein Furniture Co.* v. *Kelly,* 114 *N. J. L.* 500; 177 *Atl. Rep.* 554, enunciated the apposite rule, to wit: "Until such time as it may be provided to the contrary, by proper authority, the beneficent provisions of the act must and shall be extended alike to the weak and sick as well as to the strong and able, so long as those of either class, coming under the provisions of the act, sustain a compensable accident."

The physical condition of the petitioner was not that of a young and vigorous man, but was comparable to a man of his years. He suffered from degenerative changes usually found in a person of his age, including arteriosclerosis of his vascular system. So, if he had been seized with a coronary attack while at home at rest or while at work doing a task requiring no physical effort, such occlusion would have been a natural and probable result of his impaired coronary vessels, and so would have possessed none of the essentials of an

accident within the purview of the act. Coronary occlusion in a man of petitioner's age and make-up could have been normally expected to occur at any time, yet its actual occurrence might have been long deferred. The disease or malady, however, did not run its natural course. The petitioner was precipitated into total incapacity because of cardiac impairment as the result of the trauma. To hasten one's incapacity is to cause it.

Furthermore, the evidence establishes the fact that the petitioner's physical breakdown began immediately after the accident. Prior thereto, according to his testimony, he was a steady worker, in good health, strong in body and one who rarely, if ever, lost any time from work by reason of illness; but since the accident he has suffered with a gradual decline in health, shortness of breath, general weakness and easily fatigued.

That physical strain or effort may be a competent cause in precipitating the development of coronary occlusion is no longer open to doubt. Like any other diseased condition, arteriosclerosis of the coronary vessels may, under certain circumstances, be aggravated by such trauma, resulting in a final occlusion. See *Hertzberg* v. *Kapo Dyeing and Printing Co.,* 19 *N. J. Mis. R.* 201; 18 *Atl. Rep.* (2d) 736; *Hentz* v. *Janssen Dairy Co.,* 122 *N. J. L.* 494; 6 *Atl. Rep.* (2d) 409; *Wagner* v. *Lewis,* 13 *N. J. Mis. R.* 807; 181 *Atl. Rep.* 394; *Geltman* v. *Reliable Linen Co.,* 18 *N. J. Mis. R.* 423; 13 *Atl. Rep.* (2d) 844; *Hayes* v. *Bloomfield Church,* 18 *N. J. Mis. R.* 139; 11 *Atl. Rep.* (2d) 417.

\*          \*          \*          \*          \*          \*          \*

In the present case the burden of proof which rests upon the petitioner to establish his right to compensation has been met.

\*          \*          \*          \*          \*          \*          \*

It is, therefore  \*   \*   \*   adjudged, determined and ordered, that judgment final be entered in favor of the petitioner and against the respondent.

\*          \*          \*          \*          \*          \*          \*

JOHN J. STAHL,
*Deputy Commissioner.*