NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

PETER MESKO, PETITIONER, v. OVERMAN CUSHION TIRE COMPANY, RESPONDENT.

Decided March 22, 1938.

For the petitioner, *Perry E. Belfatto.*

For the respondent, *James J. Skeffington.*

\*　　\*　　\*　　\*　　\*　　\*　　\*

It appears that the petitioner, Peter Mesko, alleges that on the 10th day of June, 1936, while working cutting sheets of rubber, injured his right hand and arm. He testified that at the time this accident occurred he was earning $27.28 per week. He testified that on June 10th, 1936, while firmly gripping his knife to cut the rubber, it stuck, and he had to give it an extra effort, at which time he felt something snap in his hand and he had difficulty opening the fingers, one by one, forcing them with his left hand. He testified that he showed his hand to the foreman and told him what had occurred and that he was sent to Dr. Rubin, who saw him once or twice. He further testified that he returned to work and continued working for more than a year after the occurrence and that his hand did not get any better, but that he did not receive any further treatment from any physician. He testified that he was examined by Dr. Kralik and also by Dr. Koppel. He admitted that Dr. Rubin, after examining him, sent him to Dr. George in Newark for a further examination. He further testified that before this occurrence there

was nothing wrong with his hand, that is, it was the same as his left hand, and that the treatment which he gave it on the advice of Dr. Rubin was to bathe it in Epsom salts and hot water day and night.

Dr. Joseph J. Kralik testified that he examined the petitioner on September 24th, 1937, at which time he found him to have a contraction of the tendons of the right hand, a distinct contraction of the tendons of the third and fourth fingers and possible contraction of the first and second fingers, an atrophy of the hypereminence and a loss of hyperextension of the right fourth finger over the fourth dorsal knuckle at the metacarpal phalangeal joint, which was enlarged. In his judgment, the dorsal surface was contracted. He found no difference in size in diameter of the arm or forearm as compared with the left arm. He estimated the disability at twenty-five to thirty per cent. loss of function of the right hand. He admitted that his conclusion of a causal relation between the alleged occurrence and the contracture of the man's hand was predicated upon the facts given in the hypothetical question and that at the time he examined the man the condition was manifestly chronic and that he could not tell whether or not this chronic condition had existed prior to the date of the alleged occurrence.

Dr. Joseph Koppel also testified on behalf of the petitioner and stated that he examined him to-day at Dr. Arlitz's office and he found a contraction of the palmar surface of the right hand at the base of the fourth metacarpal phalangeal joint and it extended to the middle of the little finger and also to the ring finger and to some small extent to the second finger. He found the man to have an inability to extend the little finger. He found a scar elevated from the hand and stated the condition was a Dupuytren's contraction. The doctor estimated the disability at twenty-five per cent. loss of function of the hand, and considering the hypothetical question as propounded, he felt that there was a causal relation between the condition of Dupuytren's contraction and the alleged occurrence. He admitted, however, that without the history of the

occurrence as given in the hypothetical question, he could form no idea as to the length of time the Dupuytren's contraction had been in existence. He admitted further that the Dupuytren's contraction ordinarily comes on slowly and that it results from a series of repeated irritations, but that considering the hypothetical question, he felt in this case that the sudden jerk caused a tearing of the synovial sheath and an extravasation of fluid into the soft tissues and that the tendon slipped out and became contracted. He admitted that if such happened, there would be some acute evidence immediately following the occurrence.

Dr. A. A. Rubin, the attending physician, was called on behalf of the respondent and he testified that he first saw the petitioner on June 13th, 1936, at which time he asked him if he had suffered an accident and the petitioner replied that he had not suffered an accident but that his repeated and constant use of the knife on the mixing mill over a long period of time had developed a thickening in the palm of his hand near the base of the small finger. The doctor stated that he examined the petitioner and found him to have a contraction of the tendon of the right small finger, or what is known as a Dupuytren's contraction. He stated that the man had told him that this condition had been in existence for a long period of time, a matter of years. He stated that there were no acute signs of any trauma to the part involved at the time of his examination of the man, which was three days after the alleged accident. Further than that he stated that the man definitely told him he had suffered no accident. He stated that he saw the petitioner again on the 15th of June and referred him to Dr. George for corroboration of diagnosis. He stated that he recommended to the man that he bathe his hand in an Epsom salts solution. He stated definitely that there was no evidence of a tearing of the synovial sheath or evidence of an extravasation of fluid into the soft tissues, nor was there any evidence that the tendon of the small finger had popped out and become contracted at the time when he first examined the petitioner, and that his examination

revealed a long-existing thickened contracture of the flexion tendon of the right small finger which, in his opinion, had come about as a result of the occupational use of the knife on the part of the petitioner over a long period of years.

Dr. M. E. W. George testified that he saw the petitioner on June 19th, 1936, at which time the petitioner advised him that he had suffered no accident but that for many years he had been employed doing the same kind of work, which necessitated firmly gripping a knife in his right hand and that for many years he had been unable to straighten out the middle and ring fingers, but that this condition had come on gradually from the constant and repeated use of the knife. He further testified that petitioner advised him that he had been under the care of Dr. Rubin, who had given him some Epsom salts fomentations. The doctor stated that the right upper extremity of the petitioner presented a Dupuytren's contraction of the right hand, involving chiefly the little and ring fingers. The doctor stated that the condition was clearly not the result of an accident and moreover the petitioner definitely advised that there had been no accident. He stated that there was no evidence on the occasion of his examination of any acute exacerbation or aggravation of the Dupuytren's contraction at that time, nor was there any evidence of a tearing of the synovial sheath or an extravasation of fluid into the soft tissues and no evidence of any ecchymosis or other indicia of an acute condition.

Mr. Works, the superintendent, testified that the petitioner on or about the 10th of June showed him his hand but did not say that he had suffered an accident. He told him that his hand hurt and for that reason he sent the petitioner to Dr. Rubin so as to determine just exactly what the condition was of which the petitioner was complaining. He stated, however, that the petitioner made no mention of having suffered an accident or that his condition was caused by an accident. He further described in detail the operation performed by the petitioner and demonstrated how it would be practically impossible for the petitioner to suffer a jerk or unusual strain of his hand while cutting the rubber.

Petitioner's foreman also took the stand and testified that petitioner had shown him his hand about the 10th of June and said that he was having difficulty in straightening out his little finger but definitely stated that he did not have any accident, but because of the condition of the petitioner's finger, his foreman sent him to the office to be relayed to Dr. Rubin for such attention as might be necessary under the circumstances. The foreman stated that at no time did the petitioner ever complain to him that he had suffered an accident arising out of and in the course of his employment.

After carefully considering the testimony adduced on behalf of the respective parties, I am satisfied that the petitioner is suffering from a Dupuytren's contraction due to an occupational condition and that he did not suffer an accident arising out of and in the course of his employment.

It is, therefore, this 22d day of March, 1938, ordered that the petition be and the same is hereby dismissed.

JOHN C. WEGNER,
*Referee.*