MICHAEL GIAMBATTISTA, PETITIONER-APPELLEE, v.
THOMAS A. EDISON, INC., RESPONDENT-APPELLANT.

Essex County Court
Law Division

Decided January 15, 1954.

On appeal from the Workmen's Compensation Division.

*Miss Mabel L. Richardson* argued the cause for petitioner-appellee (*Messrs. Gross & Blumberg,* attorneys).

*Mr. John W. O'Brien* argued the cause for respondent-appellant (*Messrs. O'Brien, Brett & O'Brien,* attorneys).

· FOLEY, J. C. . C.   In this workmen's compensation case the petition sets up an occupational disease as the basis for the claim.   The deputy director awarded compensation upon a finding that the petitioner suffered compensable disability as the result of an aggravation of a fungus disease affecting certain fingers.

The petitioner has been in respondent's employ since 1928. He testified that for the last eight years he has been assigned to the job of repairing and maintaining machinery and that the daily cleaning of greasy parts and grinding dies entails the constant daily immersion of his hands in benzine.   He said that shortly after he had commenced this work he had some trouble with his fingernails and hands, and that this became much worse in 1948 when the nails of two fingers of the right hand and three of the left swelled, cracked and became painful.   He then went to Dr. Joseph Higi, a dermatologist, for treatment at the plant infirmary, this being the

first treatment he had sought, notwithstanding the fact that the condition had existed for approximately four years. During the same year his own physician, Dr. Wysocker, prescribed a salve for him. This doctor was not called as a witness. Petitioner testified further that since then the condition has worsened steadily and that another finger on each hand has become involved. However, he has not sought treatment although he has been in the plant dispensary on occasion, and he still is doing the same job daily.

Dr. Irving Shapiro, a dermatologist, testifying in petitioner's behalf, examined him on September 30, 1952, and found five fingernails to be striped, ridged, cracked, discolored and thickened. The nails were pressing upon surrounding tissues, causing redness and swelling. When he examined again on the morning of trial he found that two additional nails had become involved and that the condition of the five appeared to have been aggravated in point of the extent and severity of the irritating process.

He diagnosed the condition as "an occupational stigmata" resulting from constant immersion in benzine, a primary irritant.

Dr. Higi, when called by the respondent, testified that upon the occasions of his examinations on December 13, 1948 and April 10, 1953, he had made a culture from scrapings taken from the under side of some of the affected nails and found that they contained a fungus growth. He diagnosed the condition as onychomycosis, commonly called ringworm, a fungoid disease. He pointed out that if the condition was one of contact dermatitis, all nails would have been affected simultaneously.

Dr. Bart James, a dermatologist, examined in behalf of the respondent on the day of trial and confirmed the conclusions of Dr. Higi that the petitioner was suffering from fungus infection rather than contact dermatitis, likewise stressing the fact that only some of the fingers were involved.

All of the doctors conceded the possibility of the aggravation of the fungus infection but none opined that such aggravation was probable, nor was there the slightest

suggestion by any that the infection originated in the irritant.

The weight of the evidence supports the conclusion that the disease from which petitioner suffers is fungoid in nature and it is so held.

However, I am unable to agree that the petitioner has made out a compensable claim under the occupational disease section of the statute. My reasons therefor are twofold.

The more important reason is the legal impropriety of awarding compensation in any case in which the claim is based upon an "occupational aggravation" of disease as distinguished from an occupational disease originating in the circumstances defined by statute as those which render the disease compensable.

By statutory definition "compensable occupational disease" includes "all diseases arising out of and in the course of employment, which are due to causes and conditions which are or were characteristic of or peculiar to a particular trade, occupation, process or employment, or which diseases are due to the exposure of any employee to a cause thereof arising out of and in the course of his employment." (N. J. S. A. 34:15–31).

It seems plain that the legislative definition contains the basic requirements that the disease arise out of and in the course of the employment, and that it be due either to causes and conditions peculiar to or characteristic of the employment, or due to exposure to a cause which arises out of and in the course of the employment. Thus, origin of the disease itself from some cause connected with the employment is requisite to recovery.

"Disease" is defined in the *New Century Dictionary* (1933) as: "a morbid condition of the body, or of some organ or part; illness; sickness; an ailment or malady." It is a term specific and distinct from those things which are characteristic of it, such as, symptoms, and from that which may or may not mark its existence, namely, disability. Aggravation of a condition of disease necessarily presupposes prior existence of the disease. Aggravation is not a

malady in itself. It may result in greater severity of symptoms and it may increase the disabling effect of the disease but it does not change the character of a disease.

The statute is cast in terms of causation of disease. None of its provisions deals with the problem of occupational aggravation of disease. While the court is cognizant of the salutary principle that workmen's compensation legislation should be liberally construed it is also mindful that it may not by way of construction import into the statute terms or concepts which are not there. It would be an act of judicial legislation to hold that a disease due to causes outside of the employment becomes compensable merely because the employment is a source of aggravation to the condition produced by the disease.

Perhaps the misapprehension of the deputy director that an occupational aggravation of a disease is compensable stemmed from the fact that an accident arising out of and in the course of the employment, resulting in an aggravation of a preexisting physical disability, has long been recognized as compensable. Analysis reveals that such a conclusion is a *non sequitur*. In the latter case the aggravating accident, once proved, empowers the Division to award for the disability naturally and proximately flowing from it, the disability being but the consequence of the jurisdictional requirement of compensable accident. In such circumstances the fact of prior disability and aggravation are purely incidental and relate to the quantum of damage, not to its compensability. The aggravation is not the accident, but rather the result of it.

By the same token the aggravation of a disease, occupational or non-occupational, by other than accidental means cannot be said to amount to an occupational disease. It is at most an occupational aggravation of a preexisting condition and, as such, establishes damage, but not compensability.

■ My other reason for disagreeing with the result reached in the Division is that the proofs do not demonstrate that the employment caused an aggravation of the fungus

condition. Neither side tried the issue on the theory of aggravation. The petitioner expressly eschewed such a basis for liability, and relied completely on his doctor's diagnosis that the condition had its origin in his working with benzine. The respondent rested its case on the diagnosis of fungus infection. The determination that the fungus infection was aggravated by exposure to benzine represents a synthesis of these opposing medical diagnoses, and finds support only in the common concession by the several doctors that such a result might occur. There is no suggestion of probability in any of this testimony, and indeed, the inquiry was never directed along this line. Of the three doctors who testified, Dr. Higi made the possibility the lesser by indicating that individual sensitivity to benzine would be the determinant. It is obvious that these expressions of possibility cannot be made the basis of a conclusion that the petitioner's condition was aggravated by his employment. Our concern must be to arrive at a judgment based on reasonable probability rather than upon mere possibility. *Jaeger v. Elizabethtown Cons. Gas Co.*, 124 *N. J. L.* 420 (*Sup. Ct.* 1940); *Jones v. Newark Terminal and Transportation Co.*, 128 *N. J. L.* 190 (*Sup. Ct.* 1942), affirmed *Jones v. Court of Common Pleas of Essex County*, 129 *N. J. L.* 58 (*E. & A.* 1942); *Globerman v. Lewis Steel Products Co.*, 134 *N. J. L.* 449 (*Sup. Ct.* 1946).

Accordingly, it is the conclusion of this court that the petitioner's claim for disability must be dismissed.