32 N.J. Super. 103 (1954)
107 A.2d 801
MICHAEL GIAMBATTISTA, PETITIONER-APPELLANT,
v.
THOMAS A. EDISON, INC., RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 14, 1954.
Decided September 20, 1954.
*105 Before Judges JAYNE, STANTON, and HALL.
Mr. Morton Stavis argued the cause for appellant (Messrs. Gross & Blumberg, attorneys; Miss Mabel L. Richardson, on the brief).
Mr. John W. O'Brien argued the cause for respondent (Messrs. O'Brien, Brett & O'Brien, attorneys).
The opinion of the court was delivered by HALL, J.S.C. (temporarily assigned).
The petitioner appeals from a judgment of the Essex County Court, based on an opinion reported in 29 N.J. Super. 395, which reversed an award made by the Division of Workmen's Compensation.
The case arises under the occupational disease sections of the compensation statute. R.S. 34:15-30 et seq., as amended by L. 1949, c. 29, effective January 1, 1950. Involved is a factual issue concerning a dermatological condition of the nails of the petitioner's hands and the relation of the employment *106 thereto, in the light of somewhat confusing medical testimony and the conclusions to be drawn therefrom, and a legal problem of the interpretation of the pertinent statutory provisions.
The petitioner, an employee of respondent for some 25 years, was assigned about eight years or so ago to the job of repairing and maintaining machinery. This required removing greased parts and dipping them by hand in benzine for cleaning purposes, resulting in the continual immersion of his fingers in the liquid. We consider it important to note that the petitioner had no difficulty with his hands or nails before he started to work in benzine. Some little time after he was assigned this job, he began to notice some of his finger-nails were affected by cracking and discoloration and the surrounding tissues became swollen and somewhat painful. In 1948 he consulted the employer's medical department about the condition and was referred to a dermatologist who made an examination but did little or nothing for him by way of treatment. He also consulted his personal physician on one occasion, who prescribed a salve. The condition became progressively worse during the ensuing years, more nails became involved and the pain, tissue inflammation and swelling so much more severe that he could "hardly sleep at night" and could not put much pressure on the fingertips. So much of the evidence is uncontradicted. The claim petition was filed in October 1952 alleging, in effect, that the condition was an occupational disease caused by handling the machinery parts in chemicals. Respondent's answer denied that the petitioner was suffering from an occupational condition or from any permanent disability as a result thereof.
At the trial before the deputy director in June 1953 the petitioner called one dermatologist and the respondent two. The former examined him in September 1952 and on the day of the hearing, but made no cultures. On the first occasion, he found little black central stripes or ridges on the nails of both thumbs, one finger of the left hand and two of the right, with cracking and thickening of the nailplates, and *107 dry, swollen, painful surrounding tissue. On the second examination, two additional nails were similarly involved, with the original ones having become worse in extent and severity. He characterized the condition as an "occupational stigmata" causally related to continuous immersion of the hands in a primary irritant such as benzine over a period of years. Benzine was described as a defatting agent which tends to dry and crack the nailplates and to dry the surrounding tissue, causing permanent changes in the nature of an hypertrophy of both the plates and the tissues and consequent inflammation and pain of the latter due to pressure. The effect, or degree thereof, of primary irritants upon a person he stated to be a matter of individual susceptibility or resistance. It was brought out on cross-examination that the physician was of the opinion that the petitioner did not have a fungus infection of the nails of non-occupational origin because of lack of certain typical characteristics and the absence of similar findings on the toes, but he was positive that, even if such a fungoid condition were present, constant immersion of the affected members in benzine would be bound to irritate and aggravate it.
The detailed condition of the petitioner's hands at the time of the hearing as testified to by his medical witness was not substantially disputed by the respondent's dermatologists. They actually differed only as to the original cause thereof. One expert for the respondent was the physician who conducted the examination in 1948. He said that at that time he made a culture from shavings of the thumbnails and diagnosed therefrom a fungus infection. He believed he had also found evidence of similar infection of two of the toenails. All of this testimony was entirely from recollection since he had no records upon which to base it definitely. His second examination was in April 1953, when he made another culture, with the same diagnosis. The toenails were not examined on this occasion. His opinion was clear that there has to be a simultaneous infection of both the finger and toenails when such a fungus condition is present. The *108 nature and extent of discoloration depends, he stated, "on the occupation and chemicals that he comes in contact with." Inherent in his testimony is the opinion that constant submersion of the hands in benzine could worsen the condition, for he said such would depend on individual sensitivity to the substance, in some cases aggravation resulting therefrom, and in others, not. He was not asked whether he thought there had been such in this case. His belief was that if the condition were due primarily to benzine, all of the nails would have become affected simultaneously, but admitted that would depend on whether all had been immersed in the course of the work, on which point there was no precise evidence.
The respondent's other dermatologist examined the petitioner only on the day of the trial and preceded the first witness in testimony. His conclusion was also that the condition was fungoid in origin, basing that view primarily on the information given him as to the findings from the cultures. He found no similar involvement of the toenails, but indicated that simultaneous infection of the nails of both extremities was not necessary to make the diagnosis definitive. The opinion was also expressed that if this condition were basically a contact dermatitis, all of the nails would be involved. He agreed that benzine is a primary irritant and defatting agent and significantly stated:
"I assume after a period of years, after working with benzine or any other similar irritant, this condition would continue to get worse and there would be involvement of all the nails and also the hand."
He made no mention of the factor of individual susceptibility.
The deputy director concluded that the disability was due, to some extent, to the exposure to benzine and that the petitioner had a fungus condition of the nails in 1948, which was aggravated by the subsequent continuous immersion in the substance during his work. Partial permanent disability compensation was awarded to the extent of 5% of total, which was less than the figure given by the petitioner's expert. The respondent had presented no evidence at the trial on the *109 extent of disability, resting entirely on the defense of absence of occupational relation.
The County Court, in reversing the Division and dismissing the claim petition, agreed with the deputy director that the underlying condition was fungoid in nature and non-occupational in origin. He also found as a fact that there had been no aggravation of the condition by the occupational exposure on the basis that there was "no suggestion of probability" in any of the testimony, but that such was confined to mere possibility. His findings further indicate a conclusion that the effects of the benzine immersion did not constitute a "disease" in and of itself. He held that the occupational disease sections of the act require "origin of the disease itself from some cause connected with the employment" and stated:
"The aggravation of a disease, occupational or non-occupational, by other than accidental means cannot be said to amount to an occupational disease under the language of the statute. It is at most an occupational aggravation of a pre-existing condition, and, as such establishes damage, but not compensability."
The respondent urges, as one basis of sustaining the dismissal of the petition, that the case was presented by the petitioner, both on pleading and proof, on the theory of occupational origin of the condition and not on the theory of aggravation which the deputy director relied upon as the basis for the award. "The niceties of technical pleading have no place in the judicial enforcement of rights created by the Compensation Act." Prino v. Austin Co., 120 N.J.L. 19, 21 (Sup. Ct. 1938), reversed on other grounds, 121 N.J.L. 518 (E. & A. 1939). It is no basis for objection that the principle on which an award was made was not pleaded, if it was thoroughly tried out in the case. Fontaine v. United Engineers and Constructors, Inc., 12 N.J. Misc. 220 (Sup. Ct. 1934). Although a formal amendment of the pleadings might well have been applied for and allowed, as a matter of good practice, the basis of the award was plainly stated by the deputy director at the close of the testimony, while there was yet time for the respondent to make prompt *110 objection, and, if surprised, to seek further opportunity to meet the issue. This it did not do. The matter of aggravation seems to us to have been fully litigated by the parties and no prejudice is demonstrated. The contention now urged by the respondent is unavailing to it. Fontaine v. United Engineers and Constructors, Inc., supra; Rutledge v. Passaic County, 24 N.J. Misc. 108 (C.P. 1946), reversed on other grounds 135 N.J.L. 206 (Sup. Ct. 1946); Stein v. Felden, 17 N.J. Super. 311 (App. Div. 1952).
The legislative history of compensation for occupational disease in this State has pertinency to the solution of the questions before us. It was first granted as to nine listed diseases by L. 1924, c. 124, p. 231, which was a supplement to the original compensation act of 1911. Mesothorium or radium poisoning was added and some language changes made by amendments thereto in the course of the next several years. L. 1926, c. 31, p. 62; L. 1931, c. 33, p. 76. The enactments as they stood in 1937 became sections 34:15-30 to 34:15-37, inclusive, of the Revised Statutes. Thereafter, dermatitis venenata was added to the disease list and further language and procedural changes made. L. 1938, c. 419, p. 1208; L. 1945, c. 53, p. 318; L. 1948, c. 468, p. 1916. Silicosis and asbestosis were made compensable and treated specially by a supplement to chapter 15 of Title 34 in 1944. L. 1944, c. 88, p. 186. L. 1949, c. 29, effective January 1, 1950, amended the sections to include, by general language, all occupational diseases as therein defined, except asbestosis and silicosis, and removed the schedule of diseases. The special silicosis and asbestosis act was repealed by L. 1951, c. 59, p. 412, thus placing those diseases on the same basis of compensability as all others.
By section 1 of the 1949 law, "compensation for personal injuries to or for death of such employee by any compensable occupational disease arising out of and in the course of his employment, as hereinafter defined, shall be made by the employer to the extent hereinafter set forth and without regard to the negligence of the employer * * *." N.J. *111 S.A. 34:15-30. It is to be observed that the language used is essentially the same as that in the corresponding section of the basic 1911 statute granting compensation in case of injury or death by accident. R.S. 34:15-7.
A compensable occupational disease is defined by section 2 of the 1949 act as follows:
"[It] shall include all diseases arising out of and in the course of employment, which are due to causes and conditions which are or were characteristic of or peculiar to a particular trade, occupation, process or employment, or which diseases are due to the exposure of any employee to a cause thereof arising out of and in the course of his employment." N.J.S.A. 34:15-31.
All provisions of the general compensation law applicable to claims for injury or death by accident were enjoined by the 1924 supplement to apply to injury or death by compensable occupational disease, except where inconsistent. R.S. 34:15-35.
The broadened scope of coverage provided by the 1949 amendment applies to the petitioner's claim since it was in effect at the time his disability became sufficiently severe to bring about the filing of a formal claim. Cf. Estelle v. Board of Education of Borough of Red Bank, 14 N.J. 256, 258 (1954).
The 1949 amendment is deliberately comprehensive in language and scope. It even covers a disease the risk of which is not generally known in the particular employment or where the contraction of it is the result of the individual susceptibilty or allergy of the particular employee, so long as it is due to exposure to a cause thereof arising out of and in the course of the employment. Stepnowski v. Specific Pharmaceuticals, Inc., 18 N.J. Super. 495 (App. Div. 1952); Bondar v. Simmons Co., 23 N.J. Super. 109 (App. Div. 1952), affirmed on opinion below, 12 N.J. 361 (1953). It was not, as the respondent suggests to us, designed merely to provide compensation in cases of injury as a result of continuous minimal traumata, which had been held not to amount to an "accident" in such cases as Capuano v. Wright *112 Aeronautical Corp., 134 N.J.L. 339 (Sup. Ct. 1946) and Di Maria v. Curtiss-Wright Corp., 134 N.J.L. 524 (Sup. Ct. 1946). Our broadening legislation is in line with the trend that has been proceeding across the country at a rapid pace for some time to expand occupational disease coverage, eliminate restrictive provisions and substitute a broad definition for schedules or lists, all undergirded by the basic philosophy that the workman should have the benefits of compensation where his ailment factually results from or is contributed to by the risks and incidents of his work. See 1 Larson, Workmen's Compensation Law (1952), § 41.00 et seq. Cf. Bondar v. Simmons Co., supra. In view of the definition in our statute, the proof of a causal connection between working conditions and the harm should be the focal point of the inquiry. See 8 Rutgers L. Rev. 104-105 (1953).
Our current occupational disease sections, by reason of their historical development and the fact they are clearly an integrated part of the system of compensation law, must be interpreted and construed in the light of the same general principles as are applied in cases of injury or death from accident. Cf. Modern Industrial Bank v. Taub, 134 N.J.L. 260, 263 (E. & A. 1946). Included is the long-established rule of liberal construction. Cf. Sigley v. Marathon Razor Blade Company, Inc., 111 N.J.L. 25, 31 (E. & A. 1933).
We come then to a consideration of the factual issue. Our function as an appellate tribunal is essentially to determine whether the findings of the County Court are supported by sufficient evidence. While every intendment is in favor of its judgment and considerable weight is to be accorded to its findings, even though they do not, as here, agree in large part with those of the deputy director, we will, under our permissive power (R.R. 1:5-3(a); 2:5; 4:88-13), make new or amended findings of fact when we are satisfied that the finding below is a mistaken one or not justified by the evidence. Giacchi v. Richmond Brothers Co., 11 N.J. Super. 76 (App. Div. 1951). Cf. Trusky v. Ford Motor Co., 19 N.J. Super. 100 (App. Div. 1952); Seiler v. Robinson, 24 *113 N.J. Super. 559 (App. Div. 1953), affirmed by an equally divided court, 13 N.J. 307 (1953).
As has been said, the lower court agreed with the deputy director in finding the petitioner's basic condition to be fungoid in nature and therefore non-occupational in origin. We agree with this conclusion, in view of the uncontradicted testimony as to the result of the 1953 culture, but we are constrained to hold, after a careful review of all the evidence, that the County Court was mistaken in finding that the condition had not been aggravated by the incidents of the employment and in not finding that the effects of the exposure constituted a "disease" in itself. We think the correct conclusion from the testimony of all three dermatologists is not only that the condition might be aggravated by constant immersion of the hands in benzine, but that the more probable hypothesis is that such could, and, in fact, did occur here.
More important, we are also of the opinion that the evidence in the case warrants the further finding that the effects of benzine on the petitioner's hands constituted a "disease" of occupational origin in and of itself, which was superimposed upon the pre-existing non-occupational condition. It is well recognized, and, in fact, it was conceded by all of the medical witnesses, that benzine, as a primary irritant and defatting agent, can alone cause a dermatological condition of nails and fingers continuously immersed in it, at least where the individual has particular susceptibility. A reasonable inference from the proofs here is that this petitioner did have such susceptibility. The reasonable probability is that his hands would have been affected from his work in the fluid even without the underlying condition, with the latter increasing the severity of the result. While no technical name appears in the evidence for such effect of benzine alone, we conceive it be a "disease" compensable under our statute. The word as used in the law is to be construed in the broad and generic sense of "any departure from the state of health presenting marked symptoms." Webster's New International Dictionary (2nd ed.).
*114 The rule has long been established that, in cases of injury from accident arising out of and in the course of the employment, the employer takes the employee as he finds him with his existing disabilities and weaknesses, and that the workman is entitled to compensation for all of the consequences flowing freely and naturally from his accidental injury, irrespective of the fact that such consequences may be much more severe by reason of his pre-existing condition or defect. Marshall v. C.F. Mueller Co., 135 N.J.L. 75 (Sup. Ct. 1946); Schust v. Wright Aeronautical Corp., 7 N.J. Super. 54 (App. Div. 1950). The occupational disease sections of the statute should be similarly applied. See Bondar v. Simmons Co., supra. This disease originated in the employment and so arose out of and in the course of it. Therefore, on the basis of such a disease superimposed upon and affecting a prior non-occupational condition, the respondent is liable in compensation for the end result. In this sense, we agree with the legal conclusion of the lower court that the origin of the disease itself from some cause connected with the employment is requisite to recovery, but hold that the judgment below was erroneous by reason of our new findings of fact on this score.
While unnecessary to our basis of decision, we should make some comment on the statement of the County Court that "the aggravation of a disease, occupational or non-occupational, by other than accidental means cannot be said to amount to an occupational disease." If this be a proper summary of the law, difficulty is encountered in finding the legal groundwork to support the decisions in those cases where compensation under occupational disease statutes containing no broader statutory definitions than our own has been allowed where diseases were contracted in the employment because of a pre-disposing allergic condition, LeLenko v. Wilson H. Lee Co., 128 Conn. 499, 24 A.2d 253 (Sup. Ct. Err. 1942), or where there was a lighting up or revival through employment exposure of a dormant non-occupational condition such as tuberculosis (Grain Handling Co. v. Sweeney, 102 F.2d *115 464 (C.C.A. 2 1939); Smith v. State, 138 Conn. 620, 88 A.2d 117 (Sup. Ct. Err. 1952)). Our courts have indicated that compensation is allowable in New Jersey at least in the first-mentioned situation. Stepnowski v. Specific Pharmaceuticals, Inc., supra; Bondar v. Simmons Co., supra. Liberal construction of the statute might well lead to the result, by analogy to our modern view in accident cases, that it is sufficient for compensability if the employment is, in fact, a contributing, though not the sole, cause of the accident or injury, that the mere aggravation of a non-occupational disease by non-accidental employment exposure or cause, not in itself amounting to a disease, is sufficient to ground an award of compensation under the occupational disease sections. Cf. Sanders v. Jarka Corp., 1 N.J. 36 (1948); Gargiulo v. Gargiulo, 13 N.J. 8 (1953). See 1 Larson, op. cit., § 41.62.
The judgment of the County Court is reversed and that of the Division of Workmen's Compensation affirmed.