43 N.J. Super. 352 (1956)
128 A.2d 722
EDWIN DUNCAN, PETITIONER-RESPONDENT AND CROSS-APPELLANT,
v.
T.I. McCORMACK TRUCKING CO., INC., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 13, 1956.
Decided February 29, 1956.
*354 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Aaron Gordon argued the cause for the petitioner-respondent and cross-appellant (Mr. James F. Ryan, attorney).
Mr. Walter R. Hespe argued the cause for the respondent-appellant (Mr. Walter H. Jones, attorney).
The opinion of the court was delivered by FRANCIS, J.A.D.
This matter comes to us on appeal from a judgment of the County Court where the following opinion was filed:
"This is an appeal from a determination of facts and rule for judgment entered in the New Jersey Department of Labor and Industry, Workmen's Compensation Division, wherein the petitioner was awarded 100% of total permanent disability for an occupational disease involving both hands and known medically as a Dupuytrens Contracture.
"According to the medical testimony a Dupuytrens Contracture is a condition in which the structures of the palm of the hand become involved in a scar-like contracture, the skin and fat under it being bound down to the fascia, the fascia itself becoming thickened and shortened, the tendon sheaths and tendons themselves subsequently becoming thickened and shortened. It manifests itself by a curling up of the hand, first in the ring finger and then the little finger and middle finger. It keeps curling up as time goes on. There is no doubt that the petitioner suffers from this disease.
"At the time of the hearing the petitioner testified he was 58 years of age and had been driving trucks for 40 years; that for the past 14 or 15 years he had been employed by *355 the respondent and had been driving 15-ton tank trailer trucks, sometimes 400-500 miles a day on long runs; that he was required to handle loading hoses weighing 60-70 pounds. In September of 1950 he began to notice the formation of callous on his hands and in September of 1951 because of swelling had to have a ring cut from the ring finger of his right hand. Thereafter the condition grew worse and it became necessary for him to start refusing long trips. His employment terminated in August of 1952 when the company moved to Port Reading, New Jersey, and he felt it was too great a distance for him to travel from his home each day.
"In the case of Soukup v. Friedman Marble & Slate Works, 255 App. Div. 249, 7 N.Y.S.2d 440 (App. Div. 1938), leave to appeal denied, 280 N.Y. 852, 19 N.E.2d 686 (Ct. App. 1938), Dupuytrens Contracture was held to be an occupational disease. As early as 1938 the New Jersey Workmen's Compensation Bureau recognized Dupuytrens Contracture as an occupational disease. Mesko v. Overman Cushion Tire Co., 16 N.J. Misc. 182 (W.C.B. 1938). However, compensation was not allowed inasmuch as it was not a scheduled disease under the then existing occupational disease statute, N.J.S.A. 34:15-31. The Legislature saw fit to amend this section in 1949 (L. 1949, c. 29, § 2) and substituted all occupational diseases for the scheduled list of diseases theretofore set forth. The pertinent provision is as follows:
"`"Compensable occupational disease" defined.
For the purposes of this article, the phrase "compensable occupational disease" shall include all diseases arising out of and in the course of employment, which are due to causes and conditions which are or were characteristic of or peculiar to a particular trade, occupation, process or employment, or which diseases are due to the exposure of any employee to a cause thereof arising out of and in the course of his employment.' N.J.S.A. 34:15-31, as amended. (Emphasis added.)
See Bondar v. Simmons Co., 23 N.J. Super. 109 (App. Div. 1952), affirmed on opinion below, 12 N.J. 361 (1953), *356 for an informative and comprehensive dissertation on the effect of this amendment; also Giambattista v. Thomas A. Edison, Inc., 32 N.J. Super. 103 (App. Div. 1954).
"From the medical evidence adduced at the hearing below I am satisfied that the condition suffered by the petitioner is causally related to his employment as a truck driver. The medical expert who testified for the petitioner stated that the condition affecting petitioner's hands arose out of the continued and repeated driving of heavy equipment and the handling of heavy apparatus. The medical expert for respondent stated that the cause of a Dupuytrens Contracture was unknown. The history of the onset of petitioner's condition and the weight of the medical evidence supports the Division's finding that the claw-like condition of petitioner's hand was traumatically induced by the rigors of his employment. The essential elements do not require proof beyond a reasonable doubt; it is sufficient if there is `a probable or more probable hypothesis with reference to the possibility of other hypotheses.' Lohndorf v. Peper Bros. Paint Co., 134 N.J.L. 156, 159 (Sup. Ct. 1946), affirmed 135 N.J.L. 352 (E. & A. 1947); Carpenter v. Calco Chemical Div., Am. Cyanamid Co., 4 N.J. Super. 53 (App. Div. 1949); Mergel v. New Jersey Conveyors Corp., 14 N.J. 609 (1954).
"While I did not consider it determinative, I was, nevertheless, impressed by the fact that the disability in question manifested itself in the particular members that the petitioner, who otherwise enjoyed good health, had for so many years used in the operation of the respondent's large trailer trucks and heavy hoses. It is not surprising that the human organism gives way at the point of the greatest strain and stress.
"Respondent further contends that the employer in this instance was not afforded timely notice in accordance with N.J.S.A. 34:15-33. By its terms this section of the Workmen's Compensation Act prescribes the methods whereby notice is deemed to have been given to the employer of an occupational disease, and reads as follows:
*357 "`Notice to employer or insurance carrier of occupational disease Unless the employer during the continuance of the employment shall have actual knowledge that the employee has contracted a compensable occupational disease, or unless the employee or someone on his behalf, or some of his dependents, or someone on their behalf, shall give the employer written notice or claim that the employee has contracted a compensable occupational disease, which notice to be effective must be given within a period of five months after the date when the employee shall have ceased to be subject to exposure to the occupational disease, or within ninety days after the employee knew or ought to have known the nature of his disability and its relation to his employment, whichever period is later in duration, no compensation shall be payable on account of the death or disability by occupational disease of the employee.
Under this section, notice to or knowledge on the part of the employer shall be deemed notice to or knowledge, as the case may be, on the part of the insurance carrier; and notice to or knowledge on the part of the insurance carrier shall be deemed notice to or knowledge, as the case may be, on the part of the employer.'
"The deputy director in his findings determined that the employer herein acquired actual knowledge of the condition when the petitioner exhibited his hands to Leon Kowalska, a brother of the president of the respondent company, stating at the same time, `look at the way the hands are going.' However, the entire testimony discloses that Leon Kowalska was not employed by the company and such knowledge on his part was not chargeable to it.
"The petitioner terminated his employment with the respondent on August 29, 1952. On November 24, 1952 the attorney for the petitioner served a written notice by registered mail upon the respondent and supplemented same by a further written notice on December 30, 1952. The respondent was notified by the latter letter that the petitioner had contracted an occupational disease while in its employ. Both letters were placed in evidence at the hearing below. I find that the notice of December 30, 1952, having been served within five months of August 29, 1952 and within five months after he had ceased to be subject to exposure to the occupational disease with this employer, was a sufficient compliance with the requirements of R.S. 34:15-33 both as to time and content.
*358 "The final ground of appeal is as to the quantum of the award. The award of 100% of total permanent disability was apparently predicated on the testimony of petitioner's medical expert, Doctor Uhry, a New York practitioner, who admittedly was unfamiliar with the method of estimating disability under the New Jersey statute. Dr. Uhry based his estimate of 100% of total permanent disability on the relationship of the disability to petitioner's occupation as a truck driver. This method, however, does not meet the standards prescribed by our courts.
"It has long been established in this State that disability is measured by its effect on the efficiency of the workman's body or its member in the ordinary pursuits of life, rather than the immediate impairment of earning power derived from a particular occupation. Everhart v. Newark Cleaning & Dyeing Co., 119 N.J.L. 108 (E. & A. 1937); Cooper v. Cities Service Oil Co., 137 N.J.L. 181 (E. & A. 1948).
"Moreover, Dr. Uhry conceded that in that light he regarded the petitioner's disability as partial. There was undisputed evidence below that petitioner had been employed as a truck driver as late as a month prior to the hearing. It is true that he testified that his activities were restricted by reason of his disability. However, taking into consideration the testimony of Dr. Visconti, the respondent's expert, that the petitioner's disability at the time of the hearing amounted to 50% of total permanent disability, and considering, also, all of the other circumstances of this case, I find the amount of petitioner's disability to be 60% of permanent total disability."
Subject to some comment set out herein which does not alter any matter of substance, the judgment is affirmed for the reasons stated.
It is patent from the language of both the Workmen's Compensation Division and the County Court that Duncan was found to be suffering from a compensable disabling occupational disease. However, we note that in the course of discussion, the County Court said that:
*359 "The history of the onset of petitioner's condition and the weight of the medical evidence supports the Division's finding that the claw-like condition of petitioner's hand (sic) was traumatically induced by the rigors of his employment." (Emphasis ours)
In order to avoid any misapprehension that may possibly arise, attention is called to the word "traumatically." Trauma signifies injury or wound; traumatically connotes resulting from trauma, injury or wound. Webster's New International Dictionary (2d ed. 1934). In the context of the opinion, the word does not mean that a finding of accidental injury was intended, or even that the contracture was due to continuous minimal traumata as in Bondar v. Simmons Co., supra. It simply means that the multiple and varied pressures on the employee's hands that were regularly incidental to his employment activity, induced the disease. And "induced" in the statutory sense (N.J.S.A. 34:15-31) in workmen's compensation cases of this type, signifies that the disease is "due to the exposure" of the employee "to a cause thereof arising out of and in the course of [the] employment." Moreover, the right to recovery is not interfered with because the employee happens to be predisposed or unusually or peculiarly susceptible to the disease. Giambattista v. Thomas A. Edison, Inc., 32 N.J. Super. 103, 111 (App. Div. 1954); Stepnowski v. Specific Pharmaceuticals, Inc., 18 N.J. Super. 495 (App. Div. 1952); Griffin v. Griffin & Webster, Inc., 283 App. Div. 145, 126 N.Y.S.2d 672 (App. Div. 1953); 1 Larson, Workmen's Compensation (1952), § 41.60.
The nature of our review of concordant factual determinations of the Division and the County Court has been reiterated recently by the Supreme Court. To warrant a reversal thereof, it must appear that the findings are "palpably erroneous" and "so plainly unjustified by the evidence that the interests of justice" necessitate "their nullification." Mahoney v. Nitroform Co., 20 N.J. 499 (1956). The record before us reveals substantial evidence in support of the findings and accordingly we affirm.
*360 The action of the County Court in reducing the award from total permanent disability to 60% of total is made the subject of a cross-appeal by the employee. He argues that the allowance is inadequate, and the employer, as a separate ground on the main appeal, contends that it is excessive (even if recovery is proper). As to the admeasurement of disability, see in addition to the cases referred to, Everhart v. Newark Cleaning & Dyeing Co., 120 N.J.L. 474, 476 (Sup. Ct. 1938); Kalson v. Star Electric Motor Co., 15 N.J. Super. 565 (Cty. Ct. 1951), affirmed 21 N.J. Super. 15 (App. Div. 1952).
The County Court appears to have been influenced largely by the undisputed testimony that Duncan had been employed as a truck driver as late as a month prior to the hearing. The probative force of that fact is impressive  even though the Deputy Director examined the condition of Duncan's hands. Further, at the oral argument, by consent we were permitted to inspect, "for what it is worth," an unsigned report dated October 6, 1955, which purported to show that he had worked regularly as a truck driver for another employer from January through September 30, 1955, and was still employed. His gross earnings per week for the six-week period between the week ending August 26 and September 30 were a minimum of $119.93 and maximum of $146.17.
The state of the proof as to incapacity (aside from the employment report referred to) is such as to lead us to the conclusion that the estimate of 60% of total is adequately sanctioned. It may be noted that in the event of either decrease or increase thereof, a revision may be ordered on proper application to the Division. N.J.S.A. 34:15-27.
The judgment is affirmed.