46 N.J. Super. 206 (1957)
134 A.2d 458
RICHARD WALSH, PETITIONER-RESPONDENT,
v.
LEO KOTLER, T/A AVON SHEET METAL WORKS, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued July 15, 1957.
Decided July 30, 1957.
*209 Before Judges HUGHES, COOLAHAN and PRICE.
Mr. Max Mehler argued the cause for the petitioner-respondent (Mr. William F. Nies, attorney; Mr. Graham Roskein, of counsel).
Mr. Edward B. Meredith argued the cause for respondent-appellant.
The opinion of the court was delivered by COOLAHAN, J.S.C. (temporarily assigned).
This matter comes before the court on appeal from judgment of the County Court increasing an award of compensation to the petitioner-respondent, Richard Walsh. Walsh v. Kotler, 43 N.J. Super. 139 (Cty. Ct. 1956). After a trial had in the Workmen's Compensation Division there was an award of 20% of partial total permanent disability for an occupational disease known medically as Dupuytrens Contracture. Walsh challenged the sufficiency of this award by appeal to the County Court. That court increased the award to 66 2/3% of partial total permanent disability and this appeal followed such action.
The respondent-appellant neither appealed nor cross-appealed in the County Court from the determination of the Workmen's Compensation Division. However, in its answering brief to the Walsh appeal in the County Court it raised the question of causal relationship and the County Court considered that question as though it had been properly presented by way of appeal or cross-appeal.
In the matter now before this court the appellant sets forth as a question involved the following:
"1. Did the County Court below, under R.S. 34:15-66 and R.R. 5:2-5 have jurisdiction to consider the entire case regardless of the party moving the cause?"
An appeal to the County Court from a judgment of a deputy director in the Workmen's Compensation Division is governed by R.S. 34:15-66, R.R. 1:2-12, and R.R. *210 5:2-5. The pertinent portion of R.S. 34:15-66 reads as follows:
"Either party may appeal from the judgment of the director, deputy director, or referee, to the county court of the county in which the accident occurred, or, if the accident occurred out of the State, then of the county wherein the hearing was had, by filing with the secretary of the division, and with the clerk of such county, a notice of appeal * * *."
It is conceded by the appellant that it did not file a notice of appeal from the Workmen's Compensation Division.
R.R. 1:2-12 states as follows:
"(a) Appeals to the county court from an order or determination of the Division of Workmen's Compensation shall be governed by Rule 5:2-5."
R.R. 5:2-5 sets forth the procedure to be followed as follows:
"(a) On appeal to the county court from a judgment of the Workmen's Compensation Division the notice of appeal shall specify the parties taking the appeal and shall designate the judgment or part thereof appealed from * * *."
A reading of the statute and the foregoing rules is persuasive of the lack of jurisdiction in the County Court to consider the questions as raised by the respondent-appellant. The sole issue before that court should have been limited to the quantum of disability, and we so find. In Conquy v. New Jersey Power & Light Co., 23 N.J. Super. 325 (App. Div. 1952), in a case where a petitioner filed two claim petitions involving accidents alleged to have occurred on two separate dates, by stipulation the cases were tried together. The second petition was dismissed in the Division and no appeal was taken. The company appealed from an award on the first petition. The County Court affirmed, holding that the injuries originated in the first accident and were aggravated by the second accident. The Appellate Division reversed saying (23 N.J. Super. at page 332):
*211 "The appeal involved only the alleged November 30, 1949 accident. The deputy director had dismissed the claim petition based on the April 17, 1950 incident. No appeal having been taken from the judgment of dismissal, that proceeding was res judicata. There was, therefore, no issue presented to the County Court as to whether there was an accident on April 17, 1950, with resultant disability either by way of aggravation or causation.
On appeal in a workmen's compensation case (R.S. 34:15-66), the County Court must determine only the issues presented, and is limited in its consideration and determination to the grounds of appeal asserted by the parties."
However, our consideration of the extent of the question of disability convinces us that there was in fact the causal relationship sought to be challenged by the employer.
The claimant, Richard Walsh, age 68, worked as a roofer for 40 years, the last nine or ten years with the respondent-appellant. His work consisted of the usual duties of a roofer, scraping roofs with an iron bar, using hammers and trowels as well as hoisting and pulling pails of asphalt, slag and rolls of paper and other materials up to roofs by means of rough manila ropes.
He worked continuously at this trade without any difficulty or ill health until the winter of 1952-3. At that time his hands broke open and bled after pulling ropes. They remained sore and he was compelled to cease work. During the trial in the Division Walsh testified that his hands "began to get a little tight" and "a little stiff" in 1953, but he paid little attention to it at first. The stiffening progressed further until by December 1954 the hands reached the clawlike state of contracture known as Dupuytrens Contracture. As a result of this disabling condition he stopped work in June of 1954. His employer, the respondent-appellant, did not accept him for reemployment in December of the same year.
Dupuytrens Contracture has been described as a condition in which the structures of the palm of the hand become involved in a scar-like contracture, the skin and fat under it being bound down to the fascia, the fascia itself becoming thickened and shortened, the tendon sheaths and tendons themselves subsequently becoming thickened and shortened. *212 It manifests itself by a curling up of the hand, first in the ring finger and then the little finger and middle finger. The hand keeps curling up as time goes on.
This court in the case of Duncan v. T.I. McCormack Trucking Co., 43 N.J. Super. 352 (App. Div. 1956), affirmed an award of compensation for occupational disease to a truck driver who was afflicted with Dupuytrens Contracture. The factual situation in the Duncan case differs but little from that of the instant case. The deputy director, however, in this case, after concluding the disease was compensable, attempted to apportion the quantum of disability upon the basis of the petitioner's pre-disposition to the condition and his refusal to submit to surgery, while finding "the overall disability * * * considerably higher, the excess * * * not being chargeable to the respondent, nor attributable to the employment."
The County Court properly rejected this apportionment as a matter of law, citing the following cases for the proposition that the employer is liable for all of the end result where a workman is predisposed to an occupational disease: Giambattista v. Thomas A. Edison, 32 N.J. Super. 103 (App. Div. 1954); Bondar v. Simmons Co., 23 N.J. Super. 109 (App. Div. 1952), affirmed 12 N.J. 361 (1953); Davenport v. Alvord Hotel, 21 N.J. Super. 493 (Cty. Ct. 1951); Cooke v. Cooke & Cole Silk Co., Inc., 19 N.J. Misc. 581 (W.C. 1941); Burrock v. Tung Sol Lamp Works, Inc., 30 N.J. Super. 456, 465 (Cty. Ct. 1954); Masses v. Central Foundry Co., 131 N.J.L. 41 (Sup. Ct. 1943). The record, moreover, does not disclose a refusal to submit to surgery encompassed by the provisions of R.S. 34:15-23.
Appellant's principal contention is that Dupuytrens Contracture is a disease which progresses regardless of any injury or external conditions, and that petitioner in this case failed to sustain the burden of proving a causal connection between the disease and his employment. It urges, also, that the hypothetical questions propounded to the petitioner's medical experts were inaccurate and vitiated the resultant opinions. And finally, it contends that the increased *213 award is erroneous, urging that under R.S. 34:15-12(w) the disability should have been awarded in an amount of partial total permanent disability bearing a relationship to the schedule of losses for fingers.
As far as the first contention relating to causal relationship is concerned, we are satisfied that the evidence below adequately supports the concurring finding by the Division and the County Court on this score. It is not within our province to disturb such factual determinations unless they appear palpably erroneous and plainly unjustified in the light of all the evidence. Mahoney v. Nitroform Co., 20 N.J. 499 (1956). Furthermore, medical testimony was offered supporting the premise that Dupuytrens Contracture may be precipitated by manual labor in an individual who is predisposed to this condition. Appellant in effect is merely urging on appeal that this court prefer the opinions of its medical experts, who ascribe no definite cause to the disease, over the opinions of the petitioner's experts who have stated that the disease may be precipitated by manual labor and actually was in this case.
The Workmen's Compensation Act is remedial in its nature and should be reasonably interpreted to effectuate its beneficent purpose. Sigley v. Marathon Razor Blade Co., Inc., 111 N.J.L. 25, 26 (E. & A. 1933). It is not essential, under our Workmen's Compensation Act that the employees be in perfect condition prior to the accident. The employer takes his employees with their physical defects or disabilities, and where a preexisting disease is caused to become active or flare up, and injury results therefrom, the same is compensable and it is not necessary that the accident should be shown to be the sole contributing cause of the injured condition of the employee. Hall v. Doremus, 114 N.J.L. 47, 48 (Sup. Ct. 1934); Furferi v. Pennsylvania Railroad Company, 117 N.J.L. 508 (E. & A. 1936); Bernstein Furniture Co. v. Kelly, 114 N.J.L. 500 (Sup. Ct. 1935).
In the case under review it cannot be stated that the proofs are speculative as to the cause of the condition involved *214 for they clearly demonstrate the time that the condition manifested itself or materially aggravated and accelerated the progress of his preexisting condition and produced his present disability.
Turning next to the objection anent the allegedly inaccurate hypothetical questions, the respondent-appellant does not appear to have been prejudiced thereby. While the questions to the petitioner's experts are challenged because they apparently introduce an unproved situation, viz., a "weakened condition that he had in his hands, this condition being for the past 40 years * * *," and because they omit to detail aspects of the petitioner's duties as a roofer other than those requiring the pulling of ropes, any misconception as to the existence of prior symptomatology is negatived by the emphasis in the same questions on the fact that Walsh first noted something wrong with his hands in the winter of 1952. As to the purported omission from the hypotheses of petitioner's duties other than rope pulling, in the question to Dr. Graubard the description of petitioner's work began with the statement that he "was employed as a roofer. * * * That work required him, among other things, to pull a rough manila rope * * *." (Italics ours.) Similarly, the question to Dr. Keats described his occupation "as a roofer" and stated that this work required him "in part, to pull up planks, etc., by means of a manila rope." A reading of the hypothetical questions in their entirety and the testimony of the claimant does not persuade this court that the experts were in any way misled.
Considering finally appellant's argument relating to the increase in the award by the County Court, it is our opinion that such increase was warranted by virtue of that court's rejection of the apportionment formula improperly utilized in the Division, as well as the medical testimony adduced in the record before the Division. We cannot consider an occupational disease such as Dupuytrens Contracture, having such disabling consequences, to be measurable in terms of the loss of use of four fingers.
*215 It has been established in this State that disability is measured by its effect on the efficiency of the workman's body or its members in the ordinary pursuits of life, rather than the immediate impairment of earning power derived from a particular occupation. Everhart v. Newark Cleaning & Dyeing Co., 119 N.J.L. 108 (E. & A. 1937); Cooper v. Cities Service Oil Co., 137 N.J.L. 181 (E. & A. 1948).
The proof as to the incapacity of Walsh is such as to lead us to the conclusion that the estimate of 66 2/3% of partial total disability is justified.
The judgment is affirmed.