AUGUSTINE QUILES, PETITIONER-RESPONDENT, v. NEW JERSEY METALS COMPANY, RESPONDENT-APPELLANT.

Argued January 9, 1962—Decided March 19, 1962.

*Mr. Edward B. Meredith* argued the cause for respondent-appellant.

*Mr. Joseph Butt* argued the cause for petitioner-respondent.

The opinion of the court was delivered by

SCHETTINO, J. This is a workmen's compensation case arising out of an alleged May 26, 1952 accident. On January 31, 1955 the Deputy Director in his determinations found that petitioner-employee had suffered a compensable accident which caused lumbosacral strain and awarded compensation. Concededly within time, employee filed a notice of appeal from so much of the judgment of the Division of Workmen's Compensation as "awarded compensation for temporary disability for 8-5/7 weeks and for a partial-permanent disability of 10%." The employer did not appeal. *N. J. S. A.* 34:15–66; *R. R.* 5:2–5(a); *R. R.* 1:3–2.

Thereafter, before the appeal was heard, the County Court remanded the cause to the Division directing the Deputy Director to describe his "specific findings as to the nature and extent of the petitioner's permanent disability." Supplemental Findings of Facts dated November 23, 1955 were accordingly prepared and returned to the court. Be-

fore the County Court could hear argument, however, the employee's attorney informed the court that Quiles had undergone an operation for the removal of a herniated disc.

The case was again remanded to the Division of Workmen's Compensation by order dated January 13, 1956. After several hearings culminating in supplemental determinations filed on September 4, 1958, the Deputy Director stated, *inter alia:*

"After a careful consideration of all the evidence, I am constrained to find that the injury sustained by the petitioner on May 24, 1952, due to a compensable accident in the respondent's employ, was a herniated disc and not merely a lumbo-sacral strain, as determined at the earlier trial; and that the said injury required subsequent surgical repair, consisting of a laminectomy for the removal of the herniated nucleus pulposus at the level of L–4 and L–5 on the left side, plus a spinal fusion."

He made awards of additional amounts for temporary disability, medical and counsel fees and an increase of permanent disability from 10% to 35%. Neither petitioner nor employer gave notice of appeal from these additional awards.

During the spring of 1959, employee's attorney applied by letter to the County Court for a hearing date of his original appeal, taking the view that it covered the 1958 determination as well and desiring to challenge the adequacy of the award there made. At first, the court inclined toward the view that its order of January 13, 1956 (the second remand) had divested the court of its jurisdiction over the original appeal and that consequently there was no cause pending before the court on which action could be taken. Thereafter, upon motion made by the employee to have a hearing date set and after oral argument, the County Court held in favor of the employee's contention. In a letter opinion the court stated:

"The court has conducted its own research in this matter and is satisfied that under the present status of the rules and the decisions

in this State, until there is a final judgment in this appeal it has not been disposed of and the Remand Order does not deprive this court of jurisdiction. The court refers to the decision of the Superior Court, App. Div., Francis, J. A. D., *Grogan v. William J. Scully, Inc.*, 42 *N. J. Super.* 174, *p.* 178 under point 4. The court is satisfied that this court does have jurisdiction and that the petitioner-appellant is entitled to have this appeal heard in this court."

Accordingly, the County Court proceeded to hear the appeal. A judgment was rendered granting the same compensation for temporary disability and medical expenses as determined by the Division of Workmen's Compensation. But the court increased the award for permanent disability from 35% to 65% of total. The employer appealed, and before argument in the Appellate Division, we certified the cause on our own motion.

## I.

We shall first discuss the procedural points advanced by the employer. It argues that the January 13, 1956 order remanding the case for the second time was "unlimited in scope and by its terms terminated the appeal as far as the County Court was concerned." We cannot agree with this contention.

Jurisdiction is retained by the County Court when it remands a cause if the court so stipulates in its order. See *Povoa v. Manuel Viera Construction Co.*, 136 *N. J. L.* 650 (*Sup. Ct.* 1948); *Povoa v. Manuel Vieira Construction Co.*, 2 *N. J. Super.* 48, 49 (*App. Div.* 1949). The question now presented is whether jurisdiction is retained even though no express reservation is made in the order of remand.

Where additional proof is deemed necessary for final determination of a cause under review, it has been a common practice of County Courts to remand to the Division of Workmen's Compensation for additional testimony and findings. And remands for this purpose have been held to be interlocutory orders. *Grogan v. William J.*

*Scully, Inc.,* 42 *N. J. Super.* 174 (*App. Div.* 1956); *Paluk v. United Color & Pigment Co.,* 134 *N. J. L.* 601 (*Sup. Ct.* 1946); *Povoa v. Manuel Viera Construction Co., supra.* Quite obviously, therefore, the remanding court in such a case must still have jurisdiction for the purpose of entering final judgment.

The order remanding the instant cause reads:

"By consent in open court and on the record, this case is remanded to the Compensation Court for further hearing at which time both sides *may present further medical and also further non-medical evidence of facts, happening since the accident on the questions of temporary and permanent disabilities and related medical expenses payable,* and that the Deputy Director shall make specific findings thereon." (Emphasis added.)

On its face the order remands the case only for evidence and findings supplementary in nature. Both the Deputy Director in his Supplemental Findings of Facts and the County Court in its opinion so understood it. The procedure here followed (and commonly pursued by this court and the Appellate Division as well) aids the expeditious disposal of causes. We find no basis for employer's contentions that the County Court lost jurisdiction upon the remand.

As we understand employer's next argument, it seeks a redetermination as to the occurrence of a compensable accident and the causal relationship between the accident and the herniated disc. When the employee filed his appeal on February 17, 1955, from the judgment of the Division, his arguments were directed only toward the Division's findings on the amounts of temporary disability and permanent disability. The employer could have, but did not, file an appeal, which was required then, as now, in order to enable an employer to seek relief from the award of the division. *N. J. S. A.* 34:15–66 and *R. R.* 5:2–5.

In *Walsh v. Kotler,* 46 *N. J. Super.* 206 (*App. Div.* 1957), the Division awarded 20% of permanent total disability. The employee appealed to the County Court where

the award was increased to 66-2/3%. The employer neither appealed nor cross-appealed. But in its brief before the County Court the employer raised the issue of causal relationship and that issue was considered by that court. The Appellate Division said (at *page* 210):

"A reading of the statute and the foregoing rules is persuasive of the lack of jurisdiction in the County Court to consider the questions as raised by the respondent-appellant. The sole issue before that court should have been limited to the *quantum* of disability, and we so find."

We so hold in the present case and conclude that the issue of compensable accident is not before us.

The employer contends that the causal relationship was necessarily in issue before the County Court on petitioner's appeal. Moreover, the record shows that the County Court in its opinion stated: "* * * the main issues are the question as to whether the petitioner sustained an injury work-connected and a medical one relating to and concerning the extent of a permanent disability."

The employee at oral argument contended that no such issue was before the County Court, that he had limited his appeal to the awards for temporary disability and for partial permanent disability and that, as the employer had not appealed, the County Court should not have considered causal relationship. We agree with petitioner and hold that that issue also should not have been considered by the County Court. See *Walsh v. Kotler, supra.*

## II.

We next deal with employer's contention that the amount of permanent disability fixed by the County Court was excessive. The facts as disclosed by the record are as follows. Petitioner is a Puerto Rican-born unskilled laborer with a sixth-grade education. He speaks no English and required the use of an interpreter not only at the hearings but at the conferences with his attorney and at the medical

examinations. In May 1952 he was working for the employer as a laborer. His testimony is that on Saturday, May 24, 1952, he and other workmen were helping move a large beam into place in the roof of a building. While in a bending position helping to lift the beam, he felt a sharp pain in his back which he did not immediately report. This pain did not abate over the weekend and on Monday, May 26, 1952, he reported it to his foreman. For the following two weeks he was assigned light duty, after which time he was separated from employer's employ. The details concerning the employment severance are not disclosed in the record.

The employee held two jobs since he left employer's employ. He worked for another steel company as a laborer from November 1952 until several months prior to the September 1954 hearing before the Division of Workmen's Compensation and worked as a dishwasher during the summer of 1955. He has not worked since 1955.

Barreire, the employer's foreman in charge of petitioner's work group, testified that the employee had first complained about his back about two weeks before Saturday, May 24 and had then been assigned lighter work, but that he had not reported any alleged May 24 accident to him. Barreire denied that any lifting was necessary, or that Quiles did any lifting, in the placement of the beam. His testimony on the lack of lifting was corroborated by another employee who testified for the employer. He was one of the employees assisting on the day in question in holding or guiding the beam or beams while they were being put into place. This witness testified generally that on this job none of the men had any lifting to do and that he did not hear any complaint from Quiles or any of the others engaged in the work.

The employer's contention regarding the percentage of permanent total disability is based upon expert testimony. But as is not uncommon, there are sharp conflicts in the medical opinions.

In June 1952 Quiles was examined by two of employer's doctors. Neither found any pathology, any disability or anything wrong with his back that would keep him from working, and one testified that the results of tests he administered to petitioner indicated that petitioner was exaggerating his symptoms. The dates of these examinations were June 9, 10 and 17, 1952 and all within a short period after the date of the alleged accident.

On June 23, 1952 Quiles went to see a New York doctor for treatment of his back. The treatment continued into August 1952. This doctor did not testify, but his associate, Dr. Joseph Buchman, an orthopedic surgeon, who later treated Quiles, beginning in 1954, did testify for Quiles.

Dr. William Ein, a witness for the employer, an experienced orthopedic surgeon, examined Quiles three times: in October 1952, May 1954, and April 1957. He diagnosed the back condition as a "strain" in the lower lumbar region of either spontaneous or traumatic nature, depending on the medical history hypothesized, and estimated permanent disability at 5% of total. At a supplementary hearing, after Quiles had been operated upon, the doctor estimated permanent disability at 20% of total and stated that Quiles was able to work. He thought the employee was exaggerating.

Dr. David Flicker, a neurologist and psychiatrist, testified for the employer at the 1958 hearing concerning an examination of Quiles he made on May 26, 1954, stating that he found no evidence of a herniated disc and no neurologic or psychiatric disability. He re-examined Quiles on December 8, 1956, and found an "excellent" neurologic recovery from the operation, 5% psychiatric disability and felt Quiles could work, but not at heavy labor.

The employee's major medical witness was the above-mentioned Dr. Joseph Buchman who found a causal relationship between Quiles' 1952 accident and his 1954 condition. He first examined Quiles on July 26, 1954 and came to the conclusion of "a lumbo-sacral derangement, with a very definite indication of the presence of a herniated inter-

vertebral disc * * *," and that Quiles was "largely disabled and incapable of doing any appreciable work * * * totally disabled."

On June 2 and August 23, 1954 Dr. Jules H. Bromberg, a radiologist, performed certain tests on Quiles and also concluded that he was suffering from a herniated disc.

In September 1954 Dr. Harold Somberg, a neurologist for employer, together with Dr. Buchman examined Quiles. Dr. Somberg concluded that Quiles did not have a herniated disc, but had "some organic orthopedic disease in the nature of a low back derangement," which, however, was not caused by any lifting episode. Dr. Somberg thought that Quiles was exaggerating his symptoms, felt that he could work and even do heavy lifting but did find permanent disability of 5% of total.

More than a year later, on December 1, 1955, Dr. Buchman re-examined Quiles and again found indications of the presence of a herniated disc. Doctor Buchman and Doctor Somberg operated on December 7, 1955 and found that he had, in fact, suffered a herniated disc, as well as adhesions binding the nerve root of the removed disc.

Dr. Buchman, in giving his opinion that the herniated disc was causally related to the 1952 accident, stated that he thought the covering of the disc had split at that time and that the herniating of nucleus pulposus, or inner core of the disc, had been progressive, causing increasing pain. This sequence was not unique in his experience. His opinion was based in part upon the fact that when the nucleus pulposus was removed it was found to have undergone not only senescence but also processes of disease.

Dr. Buchman subjected Quiles to postoperation treatments. These ended in September 1956 because the doctor felt that his patient had reached the maximum of medical recovery. He re-examined Quiles monthly for nearly another year before he concluded that he was totally disabled. In his opinion, Quiles was suffering from an inflammation of one of the three membranes covering the central nervous

system. Finally, Dr. Buchman stated that Quiles' condition had worsened since the operation and that his pain was not relieved. At the 1958 hearing, Quiles corroborated the doctor's testimony regarding his continuing pain.

The employer's medical testimony does not rebut that of Dr. Buchman. As noted above, Dr. Somberg, employer's experienced neurosurgeon, found no evidence of herniation when he examined Quiles with Dr. Buchman in September 1954; yet the operation in which Dr. Somberg participated proved his opinion in error. Highly significant is the fact that this expert was not called by employer to testify at the postoperation hearings before the Deputy Director.

Keeping in mind this conflicting medical testimony, we consider the question of the *per centum* of disability. Although before the Division and County Court the employee sought a determination of permanent total disability, *i. e.*, 100%, he concedes that, as he has not filed a cross-appeal seeking a higher award, he is limited to the award of 65% made by the County Court. The employer argues that Quiles' permanent disability is at most 35% of total.

In *Rodriguez v. Michael A. Scatuorchio, Inc.*, 42 *N. J. Super.* 341, 352 (*App. Div.* 1956), certif. denied 23 *N. J.* 140 (1957), Judge Goldmann pointed out that an individual does not have to be in utter or abject helplessness or bedridden to be totally disabled; that the inability to secure work, if causally connected to the injury, may be as important a factor as the inability to work; and that a court, in determining the percentage of disability, must give consideration to petitioner's antecedent background, his job classification and any other specific factors involved. Judge (now Justice) Francis in *Kalson v. Star Electric Motor Co.*, 15 *N. J. Super.* 565, 576 (*Cty. Ct.* 1951), affirmed on opinion below 21 *N. J. Super.* 15 (*App. Div.* 1952), pointed out that inability to obtain any kind of work which the employer alleges the workman can engage in, is a corroborating circumstance to be considered in evaluating the employee's claim that he cannot do such

work. See also *Clark v. American Can Co.*, 4 *N. J.* 527, 534 (1950).

There is no question that Quiles' back injury has removed him from his job classification as an industrial unit, an unskilled general laborer. He is restricted in his ability to lift and bend, two of the basic requirements in performing laboring work. The County Court pointed out however that:

"The inability of the petitioner to secure employment from a lay standpoint is totally uncorroborated and the record contains only his naked statement in this record. The court is satisfied from the evidence that there is some exaggeration on the part of the petitioner. Whether this is intentional or psychiatric is not clear. In all cases of injury the mental factor as well as the physical disability can be of importance."

It also noted that:

"The court is further satisfied that the estimates of the experts, under all of the circumstances indicated, are too liberal on the petitioner's side and that apparently the respondent's experts too conservative on the respondent's side, and also that they did not take into consideration the antecedent background of and the inability of the petitioner to continue in his former job classification and the resulting effect upon his ability to secure gainful employment."

With these observations, we agree.

The estimate of the percentage of disability from orthopedic and neurological standpoints ranged from 20% to 100% of permanent total disability. In *Harrison v. Garlitli*, 120 *N. J. L.* 64, 67 (*Sup. Ct.* 1938), Chief Justice Brogan pointed out that:

"Where, * * * the court accepts neither the low percentage of disability fixed by the employer, nor the high figure fixed by the claimant, but arrives at a finding between the two, it does not at all mean an arbitrary or speculative 'splitting the difference.' Quite the contrary, it is entirely within the province of the court to find that the figures of one side are too high, those of the other too low, and from such conclusion arrive at a definite percentage that the court believes to be just."

In the present case the County Court deemed an award of 65% of permanent disability to be just. We have reviewed the record and we, too, come to the same conclusion.

### III.

The employer finally contends that it is not liable for Quiles' medical treatment rendered after the Deputy Director's first findings on the issue of liability because *R. S.* 34:15–15 requires an employee to file a petition with the Division of Workmen's Compensation requesting an order compelling an employer to furnish such services. The answer is two-fold. Firstly, the employer did not appeal and hence may not raise the question. Secondly, in any event, it had rejected employee's claim of a herniated disc. thus indicating that it would not furnish the required surgical treatment. *Sharp v. Paterson Monument Co.,* 9 *N. J. Super.* 476, 479 (*Cty. Ct.* 1950); see *Boberty v. Hillside,* 126 *N. J. L.* 416, 417 (*E. & A.* 1941); *D'Amico v. General Elec. Supply Co.,* 16 *N. J. Super.* 472, 482 (*Cty. Ct.* 1951), affirmed 22 *N. J. Super.* 199 (*App. Div.* 1952), affirmed 12 *N. J.* 607 (1953); *Lynch v. Newark,* 43 *N. J. Super.* 546, 551 (*Cty. Ct.* 1957), affirmed 46 *N. J. Super.* 335 (*App. Div.* 1957); *Dunay v. Int'l Smelting & Rfg. Co.,* 60 *N. J. Super.* 546, 552 (*Cty. Ct.* 1960).
Affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.