LENA HANDLEMAN, PETITIONER-APPELLANT, v. MARWEN STORES CORP., d/b/a KAYBEE STORE AND UNITED STATES CASUALTY CO., RESPONDENTS-APPELLEES.

Argued January 21, 1969—Decided March 17, 1969.

*Mr. Myron W. Kronisch* argued the cause for petitioner-appellant (*Messrs. Roskein, Kronisch & Felzenberg,* attorneys; *Mr. Myron W. Kronisch* on the brief).

*Mr. William J. Straub* argued the cause for respondents-appellees (*Mr. William A. Davenport,* attorney).

The opinion of the court was delivered by

PROCTOR, J. The primary issue in this workmen's compensation case is whether the County Court on appeal from the Workmen's Compensation Division has jurisdiction to expand the record on its own motion by appointing and hearing the testimony of an impartial medical expert.

Petitioner's husband, Harry Handleman, died of heart failure on February 6, 1966, five days after receiving injuries to his legs arising out of and in the course of his employment. In the Workmen's Compensation Division the sole issue was whether the injuries caused a pulmonary embolism which resulted in the heart failure. The judge of compensation resolved the conflicting medical testimony in favor of respondent, determining that death was attributable to occlusive thrombosis, a cause unconnected to decedent's leg injuries.

On February 1, 1966 the decedent, age 68, was employed by the respondent as a door-to-door salesman. While working that day, an automobile backed into the open door of the decedent's car while he was in the process of entering it, closing the door against decedent's legs. The shins of his legs were ground against the doorsill of his car causing contusions and abrasions, for which he received emergency treatment at a hospital. X-rays disclosed no fractures.

On the day after the accident he limped and complained of soreness in his legs. Bandages were worn for a short

period, although no time was lost from work. On February 6, 1966 the decedent visited some people in an apartment in Newark where he spent the evening, evidencing no physical discomfort. During the evening he left the apartment and walked down three flights of stairs to check the furnace in the basement. Within ten minutes after he left the apartment he was found dead at the foot of the basement stairs.

On petitioner's appeal to the County Court, Judge Antell, in the course of his *de novo* review of the record, examined the conflicting medical testimony at length and noted the following: One of the two medical witnesses for the respondent was Dr. Thomas Santoro, the Assistant Medical Examiner who had examined decedent's body in preparing the death certificate. He found no swelling or discoloration; no autopsy was performed. Dr. Santoro certified that death had been caused by occlusive coronary arteriosclerosis, and the judge of compensation in finding for respondent had relied in part on this conclusion. At the time of Dr. Santoro's examination, however, he had no knowledge of decedent's previous medical history of good health, or of the injuries he received on February 1. On cross-examination, attempts to show how Dr. Santoro would have evaluated these factors were denied by the judge of compensation upon respondent's objection. Nevertheless, Dr. Santoro conceded that to have known that decedent had sustained injuries to his legs five days prior to death would have been of assistance to him in forming his opinion.

Judge Antell concluded that Dr. Santoro's cross-examination had been erroneously curtailed, thus rendering his testimony "neutral in character, weighing neither in favor of the petitioner nor the respondent." (The record clearly accords with this conclusion.) The remaining medical testimony consisted only of the opposing conclusions of each party's expert. Dr. Pine, decedent's personal physician, testified for the petitioner in support of the pulmonary embolism theory. He said that "his general condition was good for a man of his age," with no history of heart trouble. Dr. York

for the respondent supported the occlusive coronary thrombosis theory. In analyzing Dr. York's testimony, Judge Antell found that it was based largely on a misconception of the nature of decedent's leg injuries. It was not until the admission of the accident report during Dr. York's testimony that it became clear that decedent had suffered a crush-type injury to his legs which had been pinned between the door and the sill of his car. Prior to this Dr. York had been under the impression that only decedent's shins had been injured, thus making an embolism unlikely. When confronted with the evidence of a crush-type injury he reasserted his previous position, saying that regardless of how the injury was sustained, there could be no thrombophlebitis causing a pulmonary embolism without inflammation and swelling, which Dr. Santoro had not found in his examination.

The County Court concluded: "[I]t is clear that Dr. York's opinion of causation was partly conditioned by his initial impression that there had been nothing more than a slight injury to the shinbone which could not have had any affect on the deep veins of the calf * * *. Notwithstanding this apparent flaw, I am of the opinion that the entire record as prepared in the Division should not satisfy the judicial conscience of a court which 'has the heavy obligation to bring a new mind to the case and conscientiously to reach its own independent determination,' *Close v. Kordulak Bros.*, 44 *N. J.* 489, 498 [589, 598] (1965). The evidence does not sufficiently yield to analysis and the risk of 'injustice according to law' deters us from invoking the convenient dogma that petitioner has the burden of proof. *Polulich v. J. R.* [*G.*] *Schmidt* [*Tool Die and Stamping*] *Co.*, 46 *N. J. Super.* 135, 146 (*Cty. Ct.* 1957), approved in *State v. Lanza,* 74 *N. J. Super.* 362, 374 (*Law Div.* [*App. Div*] 1962). * * * The circumstances are such that the services of an impartial medical expert are mandatory if the issues are to be resolved harmoniously with the aims of justice."

Judge Antell decided to retain the matter and receive the expert testimony in the County Court, rather than remand

the cause to the Workmen's Compensation Division, for the following reasons:

1. The Judge of Compensation who heard this case in the Division is now deceased. Therefore, whatever advantage might have accrued from having a redetermination by a tribunal who was able to observe and evaluate the demeanor of the experts no longer prevails.

2. Opportunity to observe the demeanor of the witnesses is not of material aid in appraising the contradictory opinions of the doctors. Certainly, the Judge of Compensation made no reference whatever to the demeanor or the apparent credibility of Dr. Pine or Dr. York. Therefore, the fact that their opinions would have to be gathered from the transcribed record rather than received orally would not place such opinions at a handicap in any comparison with that of an impartial medical witness who would testify orally before this court.

3. Nor is the medical question one for which the expertise of the administrative agency is required.

4. The convenience of the parties and the policy favoring the prompt dispatch of judicial business favors the retention of the controversy by this court in order to supplement the record and resolve the appeal in terms of the supplemented record.

In order to hear the impartial medical witness in his court, Judge Antell invoked the general rule of relaxation, *R. R.* 1:27A,[1] to dispense with *R. R.* 5:2–5(*d*),[2] the rule which requires that a workmen's compensation appeal be decided exclusively upon the record created in the Division. Respondent objected to the above procedure.

At the court's request, the Administrative Director of the Courts furnished the names of three experts specializing in the field of cardiovascular disease. The judge chose Dr. Sol Parent who was given a detailed statement of hypo-

---

[1] *R. R.* 1:27A: "The rules applicable to any court shall be considered as general rules for the government of the court and the conduct of causes; and as the design of them is to facilitate business and advance justice, they may be relaxed or dispensed with by the court in any instance where it shall be manifest to the court that a strict adherence to them will work surprise or injustice."

[2] *R. R.* 5:2–5(d): "The trial of the [workmen's compensation] appeal shall be based exclusively on the exhibits and the transcript of the record and testimony."

thetical facts taken from the record, and which included the decedent's medical history and the circumstances of the death. The doctor was not told the names of the parties or the alternative diagnoses which were being considered by the court. Neither party objected to the form or contents of the hypothetical statement of facts as framed by the court. When the doctor testified, however, respondent refused to participate in cross-examination. At no time did respondent state any legal or factual basis for the objection made to the procedure employed by the County Court.

Based upon the hypothetical statement, Dr. Parent's opinion was that Handleman died as a result of an acute pulmonary embolism caused by phlebothrombosis of the lower legs, a condition which, unlike thrombophlebitis, need not be evidenced by swelling or discoloration. It was his opinion that the sequence of events began with the accident of February 1, when a blood clot formed in a vein of the lower legs, eventually breaking off as an embolus and blocking the pulmonary artery, causing sudden death. Dr. Parent said that the pulmonary embolism was a more likely explanation of death than a coronary occlusion, particularly because decedent had had no prior history of heart trouble. Following the doctor's testimony, Judge Antell concluded that "in all material respects he satisfied the court's need for explanatory information and more particularly for a resolution of the uncertainty arising from lack of visible damage to decedent's leg at the time of death." Accordingly, the judgment of the Division was reversed.

On respondent's appeal, the Appellate Division held that "in spite of its laudatory motives" the County Court was without power to relax R. R. 5:2–5(d), *supra,* and to expand the record by appointing an impartial medical expert, having him testify, and then determining the appeal from the Division on that expert's testimony. The court held that the rule was "merely a statement of the obvious corollary" to N. J. S. A. 34:15–49 which provides that the Division "shall have exclusive original jurisdiction of all [workmen's

compensation] claims." Accordingly, the matter was reversed and remanded to the County Court for a "prompt determination to be made exclusively upon the Division record." 99 *N. J. Super.* 416 (1968).

On the remand, following the instructions of the Appellate Division not to remand further to the Workmen's Compensation Division, Judge Antell held for the petitioner based solely on the record made in the Division. The respondent appealed, and the Appellate Division once again reversed, holding in an unreported opinion that "there is not substantial evidence present in the record to support a finding" for petitioner. We granted petitioner's motion for certification. 52 *N. J.* 496 (1968).

█ We do not doubt that a judge of compensation has the inherent power, as auxiliary to his power to decide an issue, to call and examine expert witnesses on his own motion where in his sound judgment he deems it necessary for a proper determination of the case. See *Wigmore on Evidence* (3*d ed.*), § 2484, *p.* 267. We concur with the well-reasoned opinion of Judge Gaulkin in *Polulich v. J. G. Schmidt Tool Die & Stamping Co.*, 46 *N. J. Super.* 135 (*Cty. Ct.* 1957), which so held. See *R. R.* 4:25A, which provides such a procedure with regard to impartial medical examinations and expert medical testimony in personal injury and wrongful death actions.

█ Nor do we doubt that the County Court, on appeal from the Workmen's Compensation Division, has the power to remand to the Division for additional testimony in order to complete the record. *Quiles v. New Jersey Metals Co.*, 37 *N. J.* 91, 95 (1962). The question to be resolved on this appeal, however, is whether the County Court on its own motion has jurisdiction to expand the record to take the testimony of an impartial medical expert without remanding.

Originally *N. J. S. A.* 34:15–66 provided that in workmen's compensation claims, "[t]he trial of the appeal shall be based exclusively on the transcript of the record and

testimony." See historical note following *N. J. S. A.* 34:15
–66. In 1953, however, the statute was amended and this
provision was deleted (*L.* 1953, *c.* 33, *p* 598). At the same
time the rule reproduced in footnote 2 was promulgated in
substantially identical terms as the deleted statutory provi-
sion. This was unquestionably the product of the recognition
by the Legislature and this Court that in matters of prac-
tice and procedure the more flexible rules of court are to
be preferred to rigid statutory enactments. This flexibility
is due to the ability of courts in the particular circumstances
of a case to relax the rule where the essential rights of
litigants would otherwise be prejudiced. See *R. R.* 1:27A,
reproduced in footnote 1 (formerly Rule 1:1–8).

The crux of the Appellate Division's holding that the
County Court lacked jurisdiction is the provision in *N. J.
S. A.* 34:15–49 that the compensation judges "shall have
exclusive original jurisdiction of all claims for compensa-
tion * * *."[3] As the result of a broad reading of this
statutory phrase, the Appellate Division concluded that *R. R.*
5:2–(d) was merely a corollary to the phrase, and thus
could not be relaxed. 99 *N. J. Super.,* at 420.

█ We cannot agree with the Appellate Division's con-
clusion. We interpret "exclusive original jurisdiction" as
used in *N. J. S. A.* 34:15–49 to mean only that workmen's
compensation cases must arise *in the first instance* in the
Workmen's Compensation Division. The phrase serves the
administrative function of channeling all such cases to the
agency specially created to hear them, and ordinarily, as
complete a record as possible should be made before that
tribunal.

---

3 The entire section, *N. J. S. A.* 34:15–49, reads as follows:

The commissioner, the deputy commissioners of compensation and
the referees, appointed pursuant to law, sitting individually or to-
gether, shall have exclusive original jurisdiction of all claims for
compensation arising under this chapter. The salary of such deputy
commissioners of compensation shall be eight thousand five hundred
dollars ($8,500.00) per year.

██ We have arrived at our conclusion for the following reasons: First, the action of the Legislature in 1953 in deleting the provision concerning the County Court's appellate restriction to the record made in the Workmen's Compensation Division would be rendered meaningless if the substituted rule of court were not to have vitality independent of legislative enactment. We cannot assume that the Legislature was making an empty gesture. *Nagy v. Ford Motor Co.,* 6 *N. J.* 341, 348 (1951). The very purpose of replacing a legislative enactment with a rule of court is to take advantage in a proper case of the flexibility which the rule of relaxation (*R. R.* 1:27A) permits. Such flexibility would be rendered nugatory by the Appellate Division's holding that the rule of court is a mere corollary to *N. J. S. A.* 34:15–49.

██ Second, as was noted in *Quiles, supra,* 37 *N. J.,* at 95, it has been the common practice in compensation appeals for the County Court to remand for additional testimony while retaining jurisdiction of the cause: "[T]he remanding court in such a case must still have jurisdiction for the purpose of entering final judgment." *Id.,* at 96. When jurisdiction is retained by a remanding court, no appeal is necessary from the lower tribunal once the remand is completed. The lower tribunal is acting merely as an auxiliary of the remanding court rather than exercising its own exclusive jurisdiction. If "exclusive original jurisdiction" were to be read as the Appellate Division so construed the phrase, a retention of jurisdiction on remand would be prohibited, a result which the Legislature is not likely to have intended in light of the long discretionary practice in the County Courts of remanding and retaining jurisdiction.

Third, in *Bollerer v. Elenberger,* 50 *N. J.* 428 (1967), this Court noted that ordinarily in compensation appeals the County Court in its *de novo* review should remand to the Division rather than decide issues not fully determined. We held, however, that in the circumstances of that case, *i. e.,*

that the employer briefed and argued all issues, that the petitioner was 62 years old and had waited more than six years for a resolution of the case, "the interests of justice require that we bring finality to these proceedings," and thus no remand was necessary for resolution of the case. *Id.,* at 434–435. There was no suggestion in *Bollerer* that the concept of jurisdiction was of any significance in the decision not to remand to the Workmen's Compensation Division; rather, the decision was predicated upon the Court's evaluation of the circumstances, exercising its discretion in order to avoid the petitioner's needless hardship.

 Ordinarily, of course, on a *de novo* review by the County Court any additional testimony should be taken on remand to the Workmen's Compensation Division. It is important that due regard be accorded an administrative agency's expertise, as well as the compensation judge's opportunity to see and hear all of the witnesses, and to reassess the case in light of the new testimony. In the present case, however, these considerations were minimized by the death of the judge of compensation who heard the case in the Division, and were outweighed by the demands of judicial efficiency which under the circumstances called for a prompt resolution of the controversy.

We are satisfied that as a result of hearing Dr. Parent's testimony, Judge Antell was well warranted in finding for the petitioner. In view of the disposition of this case, we need not reach petitioner's further argument that on the record made in the Division, the Appellate Division erred in reversing the County Court's later holding in petitioner's favor.

The judgment of the Appellate Division is reversed and the County Court judgment of July 7, 1967 is reinstated.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and HANEMAN—6.

*For affirmance*—None.