**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4867-15T3

ANDREA ELIAS,

    Petitioner-Respondent,

v.

LIFE CARE SERVICES, d/b/a
HARROGATE,

    Respondent-Appellant.

_____

        Argued September 25, 2017 — Decided October 11, 2017

        Before Judges Sabatino and Whipple.

        On appeal from the New Jersey Department of
        Labor and Workforce Development, Division of
        Workers' Compensation, Claim Petition No.
        2011-4216.

        Anne M. Hammill-Pasqua argued the cause for
        appellant (Capehart & Scatchard, PA,
        attorneys; Jammie Jackson and Stephen T.
        Fannon, on the briefs).

        Christopher R. Shea argued the cause for
        respondent (R.C. Shea & Associates, PC,
        attorneys; Mr. Shea, on the brief).

PER CURIAM

    Life Care Services, doing business as Harrogate ("Life

Care"), appeals a June 30, 2016 order of the Division of Workers'

Compensation granting petitioner Andrea Elias certain additional temporary disability benefits and awarding her a penalty and counsel fees. Life Care contends that the compensation judge's rulings are erroneous in numerous aspects. We disagree, and affirm.

Elias worked as a home health aide for Life Care. She injured her lower back on December 3, 2010, while getting up after showering a patient.

After the accident, various diagnostic tests and epidural injections were administered and Elias submitted to a functional capacity examination. The testing showed that Elias had suffered certain lumbar injuries, but that she would still be able to perform light duties. Meanwhile, Life Care terminated Elias and did not offer her a light duty position. Elias retained counsel and filed a claim for temporary disability and wage loss benefits under the Workers' Compensation Act, N.J.S.A. 34:15-1 to -142.

The matter originally settled on June 22, 2012, with an order issued by Compensation Judge Eugene Mulvaney approving a settlement that awarded Elias 20% of permanent partial total disability for residuals of lumbar sprain and strain, subject to a 5% credit to the employer for her prior functional loss. The parties stipulated at that time to a compromised average weekly wage rate of $345 and a compensation rate of $241.50 a week.

Elias made attempts to return to work without success, including working part time as a cashier twenty-six hours a week for about six months through December 2011. That job ended because she was unable to endure the back pain.

Because Elias' pain had increased significantly in intensity and duration, she moved to reopen her claim. Ultimately she underwent an L5-S1 spinal decompression and fusion surgery with Dr. Ramil S. Bhatnagar on January 29, 2014. On July 11, 2014, Dr. Bhatnagar concluded that Elias had reached maximum medical improvement, although he did acknowledge she had a permanent restriction of lifting no more than ten pounds. He also relied on a functional capacity evaluation, which concluded that she performed all the protocols "with significant submaximal effort."

Another examining physician, Dr. Robert R. Bachman, likewise opined that Elias remained at maximum medical improvement. Elias was also examined by another physician, Dr. Cary Skolnick, who diagnosed a decrease in Elias's range of spinal motion to about 55%. Dr. Skolnick found a "material lessening" of Elias's working ability. He did not comment on the issue of maximum medical improvement.

Elias sought another medical opinion. An orthopedist, Dr. Jason Cohen, evaluated her for that purpose. Dr. Cohen found that the fusion surgery had not been entirely successful in that the

bone around the discs had not completely fused. He disagreed with Dr. Bhatnagar's conclusion that plaintiff had reached maximum medical improvement. Dr. Cohen recommended more treatments, including epidural steroid injections, a facet block, and radiofrequency denervation.

The reopened matter was presented to Compensation Judge Salvatore Martino. Judge Martino was dissatisfied with the clarity of the medical evidence provided on the papers, and asked that Dr. Cohen be made available to testify via a telephonic conference. Dr. Cohen thereafter provided that testimony, without objection by Life Care's trial counsel. The expert generally supported Elias' contentions that she was still having problems stemming from the lower back injury.

Meanwhile, Elias again attempted to obtain employment. She worked briefly as a cook at a banquet hall for about two weeks, but left the position because she could not handle the lifting duties imposed by the chef.

On June 14, 2016, Judge Martino issued a ten-page opinion awarding Elias additional temporary disability benefits for the timeframe of July 11, 2014 to June 14, 2016, which results in a total computed benefit of $24,322.50.

Judge Martino specifically found that plaintiff's testimony at the reopened hearing was credible and "inherently believable."

4

He concluded that Dr. Bhatnagar's finding in July 2012 that Elias had reached maximum medical improvement was "premature." In addition, Judge Martino imposed on Life Care a 25% penalty because of what he determined to be its "unreasonable and negligent delay" in failing to provide benefits to Elias sooner. The judge also assessed a 20% attorneys' fee pursuant to the statute.

Life Care demanded a hearing on the claimant's proposed form of order because it wanted to get full credit, against the temporary disability award, for two "voluntary tenders" it made to Elias, each in the amount of $6,360. Judge Martino rejected the employer's argument that these voluntary tenders should be offset against Elias' temporary award, which would still allow that to be offset against any enhanced permanent award she may receive in additional proceedings.[1]

On appeal, Life Care raises several arguments, which primarily are as follows: (1) Elias failed to meet her burden of proof at the reopened hearing, and it was improper for Judge Martino to call Dr. Cohen <u>sua sponte</u> as a witness to help Elias bolster her case; (2) the judge erred in concluding from the evidence that Elias had not reached maximum medical improvement; (3) the judge misapplied <u>Cunningham v. Atlantic States Cast Iron</u>

---

[1] At oral argument on appeal, counsel acknowledged that further proceedings to reopen a permanent award are anticipated.

<u>Pipe Co.</u>, 386 <u>N.J. Super.</u> 423 (App. Div. 2006), in providing Elias with wage loss benefits because she did not sufficiently attempt to find work; and (4) the judge's imposition of the penalty and attorneys' fees was unjustified. Having duly considered these and Life Care's other arguments, we decline to set aside any of the judge's rulings.

Our scope of review of a compensation court's decisions is limited. In general, we consider whether the findings made by the judge of compensation "'could reasonably have been reached on sufficient credible evidence'" in the record, "considering 'the proofs as a whole,'" giving due regard to the judge's opportunity to observe and hear the witnesses and to evaluate their credibility, and to the judge's expertise in the field of workers' compensation. <u>Close v. Kordulak Bros.</u>, 44 <u>N.J.</u> 589, 599 (1965) (quoting <u>State v. Johnson</u>, 42 <u>N.J.</u> 146, 162 (1964)); <u>see also</u> <u>Brock v. Pub. Serv. Elec. & Gas Co.</u>, 149 <u>N.J.</u> 378, 383 (1997); <u>Perez v. Capitol Ornamental, Concrete Specialties, Inc.</u>, 288 <u>N.J. Super.</u> 359, 367 (App. Div. 1996).

Further, a reviewing court must defer to the findings of credibility made by a judge of compensation, as well as to the judge's expertise in analyzing medical testimony. <u>Kaneh v. Sunshine Biscuits</u>, 321 <u>N.J. Super.</u> 507, 511 (App. Div. 1999); <u>see also</u> <u>Kovach v. Gen. Motors Corp.</u>, 151 <u>N.J. Super.</u> 546, 549 (App.

Div. 1978) ("It must be kept in mind that judges of compensation are regarded as experts."). In the presence of sufficient credible evidence, a compensation judge's findings of fact are binding on appeal, and those findings must be upheld "even if the court believes that it would have reached a different result." Sager v. O.A. Peterson Constr., Co., 182 N.J. 156, 164 (2004) (citations omitted).

Viewed through this prism of review, we conclude that the compensation judge's rulings in this case were legally sound and are amply supported by the record. We only briefly comment on a few of the main points presented by Life Care.

Life Care argues in its brief that the compensation judge unfairly elicited testimony from Dr. Cohen, and unduly relied on that testimony. As we have already noted, and as the judge underscored in his July 14, 2016 letter submitted pursuant to Rule 2:5-1(b), Life Care's trial counsel failed to object to the record being reopened to allow for Dr. Cohen's testimony. We need not reach Life Care's claim of error on that score, which was not raised below. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

Even if we did reach the issue, the judge had clear authority and justification to request Dr. Cohen's testimonial clarification of the findings contained in his written reports. Handleman v.

Marwen Stores Corp., 53 N.J. 404, 411 (1969) (confirming the "inherent power" of a compensation judge to call and examine expert witnesses who, in the judge's "sound judgment," he or she "deems . . . necessary for a proper determination of the case"); see also N.J.R.E. 614 (analogously recognizing that authority of a judge in Superior Court cases). The judge also had the prerogative as fact-finder to consider Dr. Cohen more credible than Dr. Bhatnagar concerning Elias' post-surgical medical progress, even though the latter physician had performed the surgery. See Ramos v. M&F Fashions, Inc., 154 N.J. 583, 594 (1998).

We are unpersuaded by Life Care's argument that the compensation judge misapplied the principles of Cunningham, supra, 386 N.J. Super. at 432, respecting a workers' compensation petitioner's ability to be employed. In Cunningham, an employee suffered a compensable injury, but later returned to work and was terminated due to excessive absences unrelated to his injury. Id. at 424-27. After his termination, Cunningham received treatment from a doctor who concluded he could not work due to his work-related injury. Id. at 426. Cunningham then filed for benefits. Ibid. However, because he had already been terminated, due to his absenteeism, he suffered no actual loss of wages from his employer. Id. at 428. Consequently, Cunningham needed to show that he would have been working elsewhere, but for the injury. Id. at 432.

Because of the novelty of the legal issue, we remanded the case to afford Cunningham an opportunity to present such other proofs of actual wage loss. Id. at 433-34.

Here, Life Care contends that Elias has not shown any actual wage loss, and therefore is precluded under Cunningham from obtaining benefits. Life Care overlooks, however, a critical factual distinction that sets this case apart from Cunningham. Elias, unlike Cunningham, was terminated by her employer for a benign reason, and not because of any misconduct on her part. She lost her job because of the very work-related injury that underlies her claim.

Life Care asserts that Elias should be denied benefits because she has not made a sufficiently diligent effort to obtain replacement work. The compensation judge had ample grounds to reject that assertion. The judge, who explicitly found Elias to be a credible witness, accepted her explanation that she could not obtain other cashier jobs because it was too uncomfortable to sit and stand for long periods of time. Elias also credibly testified that she was impeded in finding other suitable work due to her medically-imposed lifting restrictions. The record exhibits the good faith attempts by Elias to work despite her pain, first as a cashier, and later as a cook. In sum, the record sufficiently supports the judge's assessment that Elias was available and

willing to work, and that she would have been working but for her disability.

The balance of Life Care's arguments, including but not limited to its claims that the 25% penalty and attorneys' fees the judge imposed are unjustified, lack sufficient merit to warrant discussion. <u>R.</u> 2:11-3(e)(1)(D),(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION